## Missouri Pacific Railroad Company v. G. B. Johnson.

### No. 2516.

1. **Evidence.**—The contents of a letter written to a party or his agent, against whom a right is asserted, is only admissible when sought to be established by parol after notice given to produce the letter.

2. **Reputation—Notice.**—Reputation that a railroad track is in bad condition may be admissible upon question of notice to the company of the condition of the road.

3. **Same—Charge of Court.**—When evidence is admitted for a specific purpose which is not competent under the main issue involved, the court should by instruction confine its consideration to the specific matter to which it is relevant. A failure thus to limit the application in the main charge will not constitute cause for reversal when no special charge is asked having that object in view.

4. **Evidence.**—When in the opinion of the trial judge the ends of justice seem to require an examination by a physician into the physical condition of one claiming damages for permanent injuries inflicted on his person, it may be ordered by the court. In such a case one or more disinterested experts should be selected by the parties or designated by the court; but a refusal by the plaintiff to permit himself to be examined by a particular expert who is obnoxious to him will not afford ground for reversal.

5. **Damages—Negligence.**—The mere continuance of wet weather with a fall of snow, is not such an unexpected and unforeseen contingency as will release a railroad company from liability to a passenger for injuries resulting to him from a failure to keep the road track in repair.

6. **Cases Reviewed.**—Railroad Company v. Halloren, 53 Texas, 47; Railroad Company v. Pomeroy, 67 Texas, 498; and Louisville City Railroad Company v. Weems, 80 Kentucky, 420, reviewed.

7. **Damages — Negligence.** — When personal injury to a railway passenger is caused by a break or sudden fracture of a rail brought about by cold weather, which the company did not have time to discover, and which break was not caused by defects in the track, then the company is not liable, provided the rail before the accident was such as a person of competent skill might reasonably presume upon inspection to be free from liability to such fracture.

8. **Damages.**—In a suit against a railway for damages for personal injuries caused by the negligence of its servants, physicians who examined the plaintiff a short time after he was injured testified that they thought his injuries were slight and that he would soon recover. Another physician testified that the symptoms indicated spinal injuries, that in the plaintiff's legs there was loss both of motion and of sensation; that when such injuries were slight they resulted in speedy recovery, and the fact that six months had passed without material improvement indicated that the injuries were serious and permanent and liable at any time to terminate in paralysis. The plaintiff testified that

he had not recovered, that he dragged his right leg in walking, could not lie on his right side or back, that he had lost in weight, and suffered continually from headache to which he had not been before subject. *Held:*

1. The testimony of the physicians who saw the plaintiff only a short time after the injury was not necessarily in conflict with the evidence of the plaintiff and of the physician who saw him at a later period.

2. A verdict for plaintiff for ten thousand dollars actual damages was not, in view of the facts, so excessive as to authorize a reversal.

9. **Exemplary Damages.**—A charge which though it gives correctly the law applicable to the right to recover exemplary damages for personal injuries alleged to have been inflicted by gross negligence, yet fails to charge that the acts of gross negligence must have contributed to the plaintiff's injury, is error. The unsafe and bad condition of a railroad bed will not of itself authorize a verdict for exemplary damages in favor of one injured by the derailing of a passenger car; it must be shown that the unsafe condition of the road at the place where the accident occurred was the result of gross negligence and that it contributed to the injury.

APPEAL from Upshur. Tried below before Hon. Felix J. McCord.

Suit brought January 21, 1888, in the District Court of Smith County, by appellee, for $21,200 actual and $20,000 exemplary damages, claimed for personal injuries received by him, December 26, 1887, in a wreck of a passenger train on the International & Great Northern Railroad, about two and one-half miles north of Troupe. Appellee was a passenger and the road was operated by appellant. On appellant's motion the venue was changed to Upshur County, where the cause was tried July 5, 1888, resulting in a verdict and judgment for appellee for $10,000 actual and $2500 exemplary damages.

Appellee during the trial asked T. R. Bonner the following: "State if in the summer or fall of 1887 you had any correspondence with any officer of the Missouri Pacific Railway Company regarding the condition of the International and Great Northern Railroad, from Troupe northward through Smith County, on the route to Mineola? Did you write any letter to any officer of the company concerning its condition? If yea, attach a copy of said letter, if you have one, and if you have no such copy state the date of said letter, the name of the officer and his official position, and give the contents of said letter substantially in full." He answered as follows: "In the fall of 1887 I wrote a letter to Dr. D. S. H. Smith, local treasurer of the Missouri Pacific Railway Company in St. Louis, urging the building of a better depot in Tyler, and incidentally spoke of the bad condition of the road. I have no copy of the letter. I think the letter was dated about October 1, 1887. I gave a general argument showing why a better depot should be built in Tyler, and stated that the railroad was reputed to be in bad order and condition, so much so that, should a wreck occur and result in injury to persons and to loss of life, the company would be liable to be mulcted in heavy damages." Appellant objected to this question and answer, because such letter to the local treasurer could not affect appellant, or visit it with notice of the

contents of the letter, it not appearing that the local treasurer had any connection with or management of the railroad track, or of the operation of the road; and also, because the original letter was not produced or its absence accounted for, and because the evidence was hearsay.   Objections overruled and the evidence admitted.

Before announcement of ready for trial, appellant presented to the court a motion representing that it had requested plaintiff, through his attorney, to permit an examination of himself by appellant's surgeon for the purpose of ascertaining the nature and extent of his injuries, which consent had not been given, and that the injuries complained of by plaintiff were of such a character as to render such examination necessary before their nature and extent could be ascertained.   The court thereupon ordered that plaintiff submit to such an examination.   Upon the suggestion of the court that he could not delay the case, appellant's counsel stated that they had employed physicians to conduct the examination in behalf of appellant, and that the examination could be made at noon recess, whereupon the trial was begun.   Appellant's counsel, it appears, had selected Dr. F. M. Hicks and Dr. Daniels to conduct the examination. Appellee objected to Dr. Hicks, and appellant's counsel then, in writing, stated to appellee's counsel that as objection was made to Dr. Hicks they demanded that Dr. Daniels be permitted to make the examination, and that Dr. Hicks be permitted to be present, but not take part except to make such suggestions to Dr. Daniels as might occur to him.   To this appellee's counsel replied, in writing, that appellee declined to be examined by Dr. Hicks, or in his presence, but tendered himself for examination by any other respectable physician and his own consulting physician, whom he desired to be present, and added that this declination was made because of a "personal aversion" to Dr. Hicks by appellee.   When the court reconvened appellant called the court's attention to its order, and to the demand and refusal as above stated, and asked the court to enforce its order and require appellee to submit to an examination, at the same time offering Drs. Hicks and Daniels, who were present in court, to conduct the examination on the part of appellant.   Dr. Daniels preferred not to conduct the examination alone.   The court declined to enforce its order, and stated that he would not require appellee to submit to an examination by a physician to whom he had personal aversion.

*J. R. Burnett,* for appellant.—Evidence of general reputation was inadmissible to prove the condition of the road.   Johns v. Northcutt, 49 Texas, 454–55; Ry. Co. v. Burke, 55 Texas, 340; Batte v. Chandler, 53 Texas, 614; Queen v. Hepburn, 7 Cranch, 290; 1 Wharton on Evidence, sec. 252.

The court erred in admitting the evidence of T. R. Bonner as to the contents of a letter written to D. S. H. Smith, local treasurer of de-

fendant. The evidence was incompetent, because hearsay and secondary and insufficient to affect appellant with notice. Prather v. Wilkins, 68 Texas, 189.

The court erred in refusing to compel plaintiff to submit to a physical examination by defendant's physician, in pursuance of its order made to that effect, and in pursuance of a demand made by defendant's attorneys." Ry. Co. v. Underwood, 64 Texas, 466; Pierce on Railroads, 298; Schroeder v. Ry. Co., 47 Iowa, 375; Ry. Co. v. Thul, 29 Kan., 466; Walsh v. Sayre, 52 How. Pr., 334; Turnpike Co. v. Baily, 37 Ohio St., 104.

The charges complained of were erroneous in that they made appellant liable for the consequences of unprecedented bad weather, whether appellant could or should have anticipated such bad weather or not, and whether the alleged prior negligence caused or contributed to the accident or not, and the charges were too onerous and misleading. R. R. Co. v. Halloren, 53 Texas, 47; Ry. Co. v. Pomeroy, 67 Texas, 502; R. R. Co. v. Reeves, 10 Wall., 176; R. R. Co. v. Weems, 80 Ky., 420.

The verdict for $10,000 actual damages is unsupported by the evidence as to such amount, and is clearly excessive; and the court erred in refusing appellant a new trial on this ground. R. R. Co. v. Finlayson, 16 Neb., 578 (20 N. W. Rep., 861); Abbott v. Tolliver, 36 N. W. Rep., 622; R. R. Co. v. McKean, 40 Ill., 218; Raymond v. City of Lowell, 6 Cush., 524, 537; Clapp v. R. R. Co., 19 Barb., 461; Strohm v. R. R. Co., 96 N. Y., 305; R. R. Co. v. Cosby, 7 N. E. Rep., 373 (107 Ind., 32); 2 Shearman & R. on Negligence, sec. 743.

The charge was erroneous in that it did not confine the alleged gross negligence to the condition of the track in the locality where the accident occurred. Appellant should be punished, if at all, not for general negligence, but for its negligence, if any, that caused the injuries; and the charge as given was misleading and not warranted by the evidence. R. R. Co. v. Fox, 11 Bush, 495; Parker v. Portland Pub. Co., 69 Me., 174; R. R. Co. v. Huntley, 38 Mich., 537; Reed v. R. R. Co., 45 N. Y., 574; Pattee v. Ry. Co., 38 N. W. Rep., 436; Morse v. R. R. Co., 16 N. W. Rep., 358 (30 Minn., 465).

The verdict for $2500 exemplary damages is unsupported by evidence, there being no evidence that appellant's willful or wanton conduct caused the injury. Cotton Press Co. v. Bradley, 52 Texas, 588; Willis v. McNeill, 57 Texas, 479–80; R. R. Co. v. Armes, 91 U. S., 489; Peoria Bridge Co. v. Loomis, 20 Ill., 235; R. R. Co. v. Cutter, 19 Kan., 94; Ry. Co. v. Shanks, 94 Ind., 598.

*N. W. Finley* and *H. Chilton,* for appellee. — 1. The admission of the evidence about the letter was not reversible error, because notice shown abundantly by other testimony.

2. The court below was not authorized to order an examination of plaintiff by a physician.

The exercise of the court's discretion in selecting the physician will not be revised on appeal.

3. The verdict for actual damages was not excessive. Brooke v. Clark, 57 Texas, 112; 2 Wood Rys., 1227.

4. Exemplary damages were authorized by the evidence. T. & P. Ry. v. De Milley, 60 Texas, 197; Brooke v. Clark, 57 Texas, 112; Blum v. Stein, 68 Texas, 608; Milwaukee v. Auris, 91 U. S., 493; Caldwell v. Steamboat Co., 47 N. Y., 282.

GAINES, ASSOCIATE JUSTICE.— In December, 1887, certain coaches of a passenger train operated by the appellant company were derailed near the town of Troupe in Smith County. The appellee was a passenger upon the train at the time of the accident; the car upon which he was being conveyed was overturned, and he was injured. He brought this suit to recover damages, both actual and exemplary, for the injury.

During the trial the plaintiff having introduced evidence tending to show gross neglect on part of the defendant in failing for a long time to keep in repair the road it was operating, was permitted to prove over the objection of the defendant that it was the general reputation in the community along the line of the road that the track was in bad order. It is to be presumed that the evidence was admitted for the purpose of showing that the company had knowledge of the defective condition of the road. The evidence may have been admissible for this purpose, though it seems to us it was unnecessary. The condition of the track, as is shown by all the evidence, had not materially changed for several months prior to the accident; and if that condition was such as plaintiff claimed it to be—unsafe by reason of old and worn out rails, ties rotten at the ends so that they afforded no protection to the rails, etc.—the want of repair was visible and manifest, and the company must be held to have known of it. Not to know it would be greater negligence than to know it and not repair, and as a matter of fact it would be absurd to presume that for this long period of time the company's officers did not have actual knowledge of the defective condition of the track.

It not appearing that the agents of the company charged with the duty of keeping the roadbed in repair lived in or were brought directly into communication with the community in which the reputation was sought to be proved, it may be doubted whether, under all the circumstances, evidence of general reputation should have been admitted. But was the appellant prejudiced by the introduction of the evidence? It will appear further on in this opinion the verdict for exemplary damages can not be permitted to stand, and hence it is unnecessary to discuss the effect of the evidence upon the verdict of the jury in that particular.

Its effect upon the finding for actual damages will be disposed of in connection with the question of the correctness of the ruling of the court in the admission of the evidence of Col. T. R. Bonner, which is raised in the second assignment. That witness was permitted to state, over objection of defendant, that he wrote a letter to the local treasurer of the company in St. Louis informing him of the condition of the road. The testimony was objected to on the grounds that the original letter should have been produced or its absence accounted for, and that notice to the local treasurer was not notice to the company. Admitting that the treasurer was the agent of the company in regard to this matter, notice should first have been given to defendant to produce the letter. If it should be held that the letter did not pass into defendant's custody, then it should have been shown that the plaintiff could not produce it. The evidence was clearly inadmissible. But as to its effect upon the verdict for exemplary damages the admission becomes immaterial. But did the admission of this evidence and that of the general reputation as to the condition of the road operate to the prejudice of appellant upon the main issue?

It was clearly the purpose of the testimony not to prove the main fact—the negligence of the defendant—but to show knowledge. But it is held that when evidence is introduced for a special purpose that is not competent upon the main issue, it is the duty of the court in the charge to confine its consideration to the particular issue upon which it is relevant. In such a case a charge of that character is proper. But the rule in this court is not to reverse for a mere failure to give an appropriate instruction unless a special charge has been asked, sufficient at least to call the attention of the court to the necessity of giving some instruction upon the point. It frequently occurs that evidence not admissible upon the main issue is admitted for a special purpose, and that the object of its admission is so obvious that the jury can not be misled. It seems to us, therefore, that the reason of the rule which requires a special request for an instruction applies in such case with undiminished force. Moreover, we are of opinion that the jury could not have been misled in this particular case. The evidence was but cumulative, and tended but slightly to establish a fact upon which the other testimony was overwhelming on behalf of the plaintiff. A cloud of witnesses, some of whom had walked over the track, testified to facts which showed beyond controversy its defective condition. Even the testimony of defendant's witnesses tended to establish the same conclusion. The testimony of its roadmaster showed that the iron was fourteen or fifteen years old, that some of the ties were rotten, and that the bed was in bad condition on account of rain and snow. He stated that track walkers had to be kept upon the road to flag the trains in case of danger, and from his testimony it is to be inferred that this was an extraordinary precaution taken on account of the condition of the road. His testimony that 92,002 ties out of 116,160 neces-

sary to tie the road had been put down in 1884 and subsequent to that time, does not weigh against the testimony of the witnesses who swore that many of the ties were rotten at the end so as not to support the rails, and that in some places two or more of such ties were to be found in succession. All defendant's witnesses virtually admitted that the condition of the road was bad, but claimed that it was due to bad weather. Under this state of the case it is unreasonable to suppose that the evidence had any effect upon the minds of the jury so far as the main issue was concerned, and its admission, therefore, was harmless error.

It is also assigned that the court erred in refusing to compel the plaintiff to submit to a physical examination by physicians in order to determine the extent of his injuries. The facts relating to this matter, as shown by the bill of exceptions, are: That the court did make the order; that the defendant presented Dr. Hicks and Dr. Daniels to make the examination, and that the plaintiff declined to be examined by Dr. Hicks, assigning no other reason except his personal aversion to that gentleman. He expressed his willingness to be examined by any other respectable physician. Dr. Daniels declined to make the examination alone. These facts being reported to the court, it refused to compel the plaintiff to submit to the examination by Dr. Hicks. In this we think there was no error. There is authority for holding that when the ends of justice demand it such an examination may be compelled. Schroeder v. Ry. Co., 47 Iowa, 375; Ry. Co. v. Thul, 29 Kan., 466; Turnpike Co. v. Bailey, 37 Ohio St., 104. The Supreme Court of Iowa find a precedent for the practice in that of the Ecclesiastical Courts of England in cases of divorce when the question of impotency is involved. This question was before this court in the case of the I. & G. N. Ry. Co. v. Underwood, 64 Texas, 463. The court, without deciding positively that an examination can be compelled, say that it should not be ordered unless the application therefor showed that it was necessary to attain the ends of justice, and intimate that in no case would the judgment be reversed if the plaintiff had shown himself willing to be examined by competent persons. We only decide here that the court did not err in refusing to compel plaintiff to be examined by the one physician to whom he expressed an objection, although this objection did not go to the competency or integrity of the physician proposed. If this power should be exercised at all, it should be by the appointment by the court of one or more disinterested experts, either of its own selection or such as may be agreed upon by both parties.

The court in the sixth paragraph of the charge instructed the jury as follows: "The defendant company would not be liable in this case and you will find for the defendant if the proof shows that the accident was directly caused by an unprecedented spell of bad weather, as sudden freezes and thaws, and that this spell of weather could not have been guarded against by human foresight, skill, and judgment. If, however,

the road had been out of repair before the bad weather set in, and proper judgment was not used beforehand to put the roadbed in good condition, and the injury resulted from a bad condition of the road and imperfect and bad track and road, and the same could have been avoided by proper skill and judgment, then the company can not defeat a recovery by proof that the accident was caused by an unprecedented spell of bad weather."

This charge is assigned as error, and in support of the assignment the proposition is submitted that "it made appellant liable for the consequences of unprecedented bad weather whether appellant could or should have anticipated such bad weather or not, and whether the alleged prior negligence caused or contributed to the accident or not, and the charge was too onerous, and were misleading."

We do not assent to the proposition that a mere continued spell of wet weather with a fall of snow is such an unexpected and unforeseen contingency as will relieve a railroad company from liability to a passenger for injuries resulting to him from the failure to keep the track in repair. In Railroad Company v. Halloren, 53 Texas, 47, the accident resulted from a washout caused, as witnesses testified, by "the hardest rain at and about the locality of the accident which any of the witnesses had ever seen in that part of the country." The section boss had passed over the track but a short time before the accident, and found it in safe condition. The accident occurred at night. The court held that under this state of facts the court should have charged the jury that the company was not responsible unless those in charge of the train knew of the washout.

In Railroad Company v. Pomeroy, 67 Texas, 498, it was held that the company could not defend itself against a claim for damages resulting from insufficient waterways by showing that the flood which caused the injury had been of very infrequent occurrence, but that in order to excuse itself it must show that it was such an extraordinary flood as has not occurred in that locality within the memory of persons then living. We think in this climate railroad companies must provide against the dangers resulting from continuous rains and melting snow. If the break in the rail caused the injury, and was a sudden fracture brought about by cold weather, which the company did not have time to discover, and if defects in the track did not contribute to it, then the company was not liable—provided the rail before the accident was such as a person of competent skill might reasonably presume upon inspection to be free from liability to such fracture. The portion of the charge under consideration might well have been confined to this view. In so far as it was not so restricted it was liberal to the defendant. In so far as it charges that the company was liable if the accident was caused by defects in the road caused by bad weather, and if such defects could have been provided against, the charge was certainly correct. We think the charge not sub-

ject to the criticism made upon it. We are, however, cited to the case of Louisville City Railway v. Weems, 80 Ky., 420, which holds that an instruction that a carrier "was bound as far as human foresight and care would enable it" to carry a passenger in safety was erroneous, from which it is to be inferred that it is claimed that the words "human foresight, skill, and judgment" in the instruction in question were "too onerous and misleading," though this is not distinctly submitted in appellant's proposition.

In Hutchinson on Carriers it is said: "In Christie v. Gregg, Sir James Mansfield, C. J., stated the law upon the subject to be that while a carrier did not warrant the safety of the passenger as a carrier did that of the goods, he was nevertheless bound to provide for his safe conveyance 'as far as human care and foresight will go,' and this or equivalent language has been employed almost universally in subsequent cases in which the obligation to the passenger has been defined." See sec. 501 and numerous cases cited. Also Dougherty v. Ry. Co. (S. C. Mo.), 8 S. W. Rep., 900, and cases cited. See also L. & N. Ry. Co. v. Ruter's Admr., 28 Am. and Eng. R. R. Cases (S. C. Ky.), 167.

It is also complained that the verdict for actual damages is excessive. The plaintiff's sufferings were not great; his expenses and loss of time inconsiderable. But he received an injury near the small of his back, from which, as he testified, he had not recovered. He dragged his right leg in walking; he could not lie upon his side or back; he suffered continually from headache, to which he had not been previously subject; and had lost twenty-four pounds in weight. Dr. Walker, who was sworn in his behalf, testified that his symptoms indicated that he had received a spinal injury, which affected his nervous system; that he had examined plaintiff and found that in his leg there was loss both of motion and of sensation; that when such injuries were slight they resulted in a speedy recovery, and the fact that some six months had passed without material improvement indicated that his injuries were serious and permanent. He also testified that in such a case the disease was liable at any time to result in paralysis. His opinion was that plaintiff's injuries were permanent and would probably so result. The physicians who were sworn for defendant testified that they attended the plaintiff a short time after the accident, and thought his injuries were slight and that he would soon recover. They were not examined upon a hypothetical case based upon the evidence, and their testimony is not necessarily in conflict with that of Dr. Walker. We must presume that the jury believed that the plaintiff testified the truth in regard to his symptoms, and that Dr. Walker's opinion, based upon the facts so testified to, as well as his own observation and examination of the plaintiff, was correct, and if so we can not say the verdict is so excessive as to authorize us to set it aside.

The assignment that the charge upon exemplary damages is error we think well taken. The charge is as follows: "Exemplary damages are

recoverable where there is willful misconduct, or such an entire want of care which would raise the presumption of conscious indifference to the consequences; as where the injury was done willfully or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them; or if defendant company knew of the defects and operated the road indifferent to the passengers thereof, they would be liable in exemplary damages; but if the injury resulted from causes such as are described in defendant's answer, which could not have been avoided by the exercise of skill and judgment, as before explained, it would not only defeat actual but exemplary damages." The vice in the foregoing charge is that it fails distinctly to tell the jury that the acts of gross negligence upon which the recovery of exemplary damages is predicated must have contributed to the accident. The trial judge probably meant this, but the idea is not distinctly conveyed. The jury may well have considered themselves authorized by this instruction to give exemplary damages on account of the general bad condition of the road, although the ties, roadbed, and iron, except as to the fracture which caused the derailment, were in perfect condition at the place of the accident. This was an important issue upon the question of the recovery of exemplary damages and should have been clearly presented. It is not a mere omission to charge, but it is a misleading instruction and is therefore fatal to the verdict for exemplary damages.

The appellee will be afforded the opportunity to remit the recovery for exemplary damages, and if this be done the judgment will be affirmed. Otherwise it will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion November 22, 1888.