## MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
### v. SALLIE M. BAKER, ADMINISTRATRIX.
#### No. 1837.

1. **Charge of Court Restricting Evidence.**—A failure of the court's charge to restrict the jury in its consideration of the evidence, where no instruction to that effect has been requested, is not reversible error.

2. **Evidence—Deposition—Impeachment of Witness.**—Where a witness had testified by deposition, her evidence could not be impeached by the testimony of another witness detailing a conversation which she had with her after the deposition was taken, from which the jury might infer that she had recanted the statements made in the deposition, and further stating, that after such conversation he had taken out a commission to retake her deposition, which had never been returned.

3. **Illegal Evidence Reversible Error, When.**—Where the evidence on a material issue is about evenly balanced, error in the admission of illegal evidence bearing thereon is not harmless, because it is supplied by other evidence in the case.

4. **Life Insurance Policy—Answers of Applicant—Warranty—Family Records.**—Where, in an application for a life insurance policy, the applicant in his answers or statements in reference to the family record, omits to mention an immaterial matter, such as the death of an infant brother of whom he had no knowledge, such failure will not constitute a breach of warranty to avoid the policy.

5. **Same—Question for Jury.**—Where the real meaning and scope of the question in such application is doubtful, it is not error for the court to leave it to the jury to decide as to whether or not the question has been truthfully answered.

6. **Evidence—Photographic Copy of Record.**—Where a copy of a record is in evidence, the testimony of witnesses who have examined the original record, and also photographic copies thereof, are admissible to show that certain dates or words therein are so written as to be uncertain and different from the copy.

7. **Practice—Opening and Conclusion—Extent of Admission.**—Plaintiff's petition in a suit on an insurance policy, in addition to the amount of the policy, asked judgment for certain premiums paid through mistake, and for reasonable attorney's fees, and the defendant, besides pleading the geneal denial, specially denied the mistake in the payment of the premium and the reasonableness of the amount of the attorney's fees claimed. Defendant having admitted at the trial "that the plaintiff had a good cause of action as set forth in her petition, except so far as it might be defeated in whole or in part by the facts of the answer constituting a good defense, which may be established on the trial," was awarded the opening and conclusion of the case. *Held,* that defendant was concluded as to the payments of premium and attorney's fee by its admissions, and evidence was not admissible in denial or diminution thereof.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*Fiset & Miller*, for appellant.—1. The statements and answers of George W. Baker as they are written down in his application are warranties, and if any one of same are in any respect untrue, whether inadvertently or purposely, the policies are avoided. Fitzmaurice v. Ins. Co., 84 Texas, 61; Ins. Co. v. Hazlewood, 75 Texas, 338; Ins. Co. v. Fletcher, 117 U. S., 519; Cooke on Life Ins., pars. 12, 15, 17, 19, and notes; 1 May on Ins., pars. 156, 158; 13 Am. and Eng. Encyc. of Law, 633, note 3.

2. The court erred in the fifth paragraph of its charge, in leaving to the jury the meaning, interpretation and construction of the twenty-fourth question and answer of the written application. It was the duty of the court alone to interpret and construe said question and answer, and to submit to the jury the simple issue of fact whether or not the question had been truthfully answered. 11 Am. and Eng. Encyc. of Law, 241, and cases cited; Soell v. Hodden, 85 Texas, 182; Long v. McAuley, (Texas Sup. Ct.), 3 S. W. Rep., 692; Taylor v. McNutt, 58 Texas, 71; Moss v. Helsley, 60 Texas, 437; Green v. Hill, 4 Texas, 465; Barkley v. Tarrant Co., 53 Texas, 252; Sheperd v. White, 11 Texas, 346; Sackett's Inst. to Jury, sec. 8, p. 14; Id., sec. 18, p. 18; Cook v. Dennis, 61 Texas, 246–249; San Antonio v. Lewis, 9 Texas, 69; Ivey v. Williams, 78 Texas 685; Edwards v. Barwise, 69 Texas, 89.

3. The insured, Baker, warranted in his answer to the twenty-fourth question, that up to that time only one of his brothers and one of his sisters had died, and the court should have so construed the answer, and instructed the jury, that if they believed from the evidence that prior to that time more than one of Baker's brothers or one of his sisters had died, the policies were void. Ins. Co. v. Raddin, 120 U. S., 184; Cooke on Life Ins., sec. 18; Bliss on Life Ins., sec. 112; May on Ins., sec. 212; Towne v. Ins. Co., 7 Allen, 51; Dwight v. Ins. Co., 103 N. Y., 342; Ripley v. Ins. Co., 30 N. Y., 136; Brown v. Ins. Co., 11 Cush., 280; Lowell v. Ins. Co., 8 Cush., 127; Edington v. Ins. Co., 67 N. Y., 197; Smith v. Ins. Co., 49 N. Y., 211.

4. The court erred, in admitting the testimony of Samuel J. Hunter regarding his visit to and conversation with Mrs. Mary Travers, and his testimony, in substance, that he made efforts to take her deposition, stating what efforts he made; and further, in allowing said Hunter to read to the jury the interrogatories to said witness filed in this case upon which no deposition was returned into court; because the deposition of said Mrs. Travers covering the ground in said interrogatories had been taken in behalf of defendant and introduced by it in evidence, and said Hunter's testimony and interrogatories were used for the obvious purpose of discrediting her testimony in said deposition, and were calculated to improperly influence the jury, and same were irrelevant, immaterial, and incompetent. 1 Greenl. on Ev., sec. 52;

1 Whart. on Ev., secs. 20, 21; 1 Rice. on Ev., sec. 251; 1 Best on Ev., secs. 252–255.

5.  The town record of births was under the law a public record kept in a public office in the State of Maine, and a copy thereof, duly authenticated according to law, was the next best evidence of the contents to the exclusion of other evidence of a weaker and less certain character.  Parol evidence is inadmissible to contradict such copy.  Rev. Stats. U. S., sec. 906; Sayles' Civ. Stats., art. 2252, note 1; Bingham v. Tollot, 63 Texas, 271, 274; Collins v. Ball, Hutchings & Co., 82 Texas, 259, 267; Robert v. Connellee, 71 Texas, 14; Kentzler v. Kentzler, 28 Pac. Rep., 370; Williams v. Davis, 56 Texas, 253; Stafford v. King, 30 Texas, 277; Railway v. Hearne, 32 Texas, 562; Meyer v. Hale (Texas), 23 S. W. Rep., 990; The State v. Richardson, 22 S. W. Rep., 769; Clayton v. Behn, 67 Texas, 53; 8 Iowa, 298; 1 Whart. on Ev., secs. 60, 63, 65, 89, and note 2; Id., secs. 90, 1354, and notes 3, 4; Id., secs. 114, 136, and note 4.

6.  The court erred in admitting the photographs of page 24 of the town records attached to the depositions of Kingsley and Albee, and in admitting the subject matter of said depositions and the testimony of Hunter regarding said photographs; and further, in admitting the testimony of said witnesses as to what said page showed was the date of George W. Baker's birth.   See authorities next above.

7.  The photographic copies were admissible if at all not as independent evidence of the contents of the record, but like maps and diagrams for auxiliary purposes to aid the witnesses in explaining and the jury in understanding the testimony.   They were inadmissible in this case, because used as independent testimony, without any other competent evidence as to the contents of the record.   Ruloff v. The People, 45 N. Y., 213, 224; Gilbert v. Railway, 36 N. E. Rep., 60; Ortiz v. The State, 11 South. Rep., 613; Adams v. The State, 10 South. Rep., 113, and cases cited.

8.  The court erred in excluding the testimony of B. F. Dyer, that the $272—alleged to have been paid by Baker under a mistake—was paid as a part of the premium due under the contract of insurance, because said testimony was inadmissible under the pleadings and defendant's general admission of plaintiff's cause of action.   Alstin v. Cundiff, 52 Texas, 460; Smith v. Bank, 74 Texas, 543; 2 Wills., sec. 4; 3 Id., sec. 415; Saunders v. Bridges, 77 Texas, 93; Dist. Court Rules, 31.

*Hunter, Stewart & Dunklin* and *Humphreys & McLean,* for appellee.

1.  The rule of warranty is a very harsh one, and the courts while enforcing it will look to the substance of the warranties and of the proof to sustain them, and a mere technical or immaterial variation from the strict letter of the warranties, where it in no manner affects the spirit and intent thereof, is not regarded.   Burleigh v. Ins. Co., 90 N. Y., 220; Ins. Co. v. Rudwig, 80 Ky., 223, 224; May on Ins., 354,

note 3; Fitch v. Ins. Co., 59 N. Y., 557; Wilkins v. Ins. Co., 57 Ind., 527; Draper v. Ins. Co., 21 N. Y., 378, 383, 384; Martin v. Ins. Co., 44 N. J., 485; Moulor v. Ins. Co., 101 U. S. (11 Otto), 708.

2. Mary Traver's deposition had been taken by defendant and filed in the case June 10, 1892. This case was being tried on the 20th of October, 1893. In her deposition she had stated unequivocally, and without giving her sources of information, that "George W. Baker was born March 11, 1845." The plaintiff had a right to retake her deposition, and show by her upon what facts she based that statement, and what were her sources of information, whether upon memory or upon any paper shown her at the time. The interrogatories to her, read in evidence, showed that that was the sole purpose of plaintiff in her efforts to get this second deposition from the witness. Mr. Hunter's evidence was competent to show the efforts that he had made in that direction, and that her continued sickness and consequent death was the probable cause of his never obtaining it. Pullman v. Smith, 79 Texas, 468; Railway v. Gallaher, Id., 685; Hittson v. Bank (Texas), 14 S. W. Rep., 993; Guerin v. Patterson, 55 Texas, 124; Titus v. Johnson, 50 Texas, 240; Smith v. Hughes, 23 Texas, 248; Dailey v. Starr, 26 Texas, 562.

3. After the original record book, the next most satisfactory and convincing evidence of the contents of a disputed page therein, and of the words, letters, and figures thereon written, would be a true photograph of that page, sworn to be a true copy by the custodian of the record and the photographer; next to the photograph would probably be a copy sworn to be a true copy by the custodian of the book, and in the same list would probably come an examined copy, sworn to be correct by any competent, credible witness; the next in weight would probably be the oral testimony of any credible person who had seen, examined and read the record and remembered its contents; and last of all would be a copy certified to be correct by the custodian of the record, for it has not even the sanction of an oath to support it; and until the Act of Congress making a certified copy evidence, it is doubtful whether it would have been admissible at all in any court. 1 Greenl. on Ev., sec. 91; United States v. Percheman, 7 Pet., 51, 85; Oakes v. Hill, 14 Pick., 442, 448; Abb. on Shipping, 63; United States v. Johns, 4 Dall., 412, 415.

4. That photographic copies are admissible, even to prove handwriting by comparison, is well established. 18 Am. and Eng. Encyc. of Law, title "Photographs," and notes; Luco v. United States, 23 How. (U. S.), 515; Duffin v. The People, 107 Ill.; White v. Burnley, 10 How. (U. S.), 382; Howard v. Russell, 75 Texas, 175.

5. In order to get the opening and conclusion of the evidence and argument, the defendant admitted the plaintiff's cause of action as pleaded, and took the burden of defeating it by the defenses pleaded. That admission not only went to plaintiff's right to recover, but also the right to recover the full amount claimed in plaintiff's petition. It

matters not what had been previously pleaded denying the liability of defendant, the subsequent admission on the docket of the plaintiff's cause of action entirely abrogated such denial, and confessed not only liability, but liability to the amount claimed. Rule 31, 84 Texas, 713; Smith v. Bank, 74 Texas, 541; Alstin v. Cundiff, 52 Texas, 453.

HEAD, ASSOCIATE JUSTICE.—Appellee prosecutes this suit to recover upon three policies issued by appellant, insuring the life of George W. Baker. A judgment for the 12 per cent statutory penalty, reasonable attorney's fees, one-half the premiums paid, and $272.25 alleged to have been paid by Baker through mistake, is also asked.

Each of the policies commences with the clause, "In consideration of the application for this policy, which is hereby made a part of this contract, the Mutual Life Insurance Company of New York promises," etc. Each of the applications thus made a part of the policies contains a number of questions and answers, followed by this statement:

"I certify that I am temperate in my habits, and am, to the best of my knowledge and belief, in sound physical and mental condition, and a satisfactory subject for life insurance.

"I also warrant and agree, that I will not die by my own act during said period of two years.

"I also agree, that all the foregoing statements and answers, as well as those that I make or shall make to the company's medical examiner, in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration of the contract, which shall not take effect until the first premium shall have been paid, and the policy shall have been delivered during my life and continuance in good health.

"Date policies September 10, 1889.

"Dated at Fort Worth, October 5, 1889.

"Signature of person whose life is proposed for insurance: Geo. W. Baker.

"Witness: B. F. Dyer, Soliciting Agent."

On the reverse side of this paper is the medical examiner's report, which consists of a number of questions to and answers by Baker, closed as follows:

"Dated at Fort Worth, Texas, 15th day of October, 1889.

"I certify, that my answers to the foregoing questions are correctly recorded ¡by the medical examiner.          "GEORGE W. BAKER,

            "Signature of the person examined.

"Witness: W. A. ADAMS, M. D."

The application concludes with a number of questions to and answers by the physician who made the examination.

Appellant alleges in defense, that Baker died by his own act, in violation of the terms of the policies, and also that he made false statements in answer to a number of the questions propounded in the applications, the nature of which will hereafter appear.

It must now be accepted as settled law, that if any one of the warranties contained in a contract of this kind is found to be untrue, a recovery can not be had, even though the untruth be the result of inadvertence on the part of the warrantor. Ins. Co. v. Fletcher, 117 U. S., 519; Fitzmaurice v. Ins. Co., 84 Texas, 61; Ins. Co. v. Hazlewood, 75 Texas, 338. It is also decided in the Fitzmaurice case, that the language used in these policies and applications constitutes warranties of the correctness of the answers as written therein, and not simply warranties of their correctness as made to the agent and examiner. By this decision we are bound, and it is therefore useless for us to inquire as to whether, in the interest of justice and fair dealing, the language referred to should not be given a construction which would devolve upon the insurer the responsibility for any mistakes made in writing the answers, as was done in the Hazlewood case.

In his application, Baker stated his birthday as March 11, 1848, and the jury so found it to be. The insufficiency of the evidence to sustain this finding is asserted in the first assignment presented in appellant's brief. We have as carefully gone over the statement of facts as it is practicable for us to do, consisting as it seemingly does of a verbatim copy of the stenographer's notes taken at the trial, and have found the evidence upon this issue very conflicting, and in view of the fact that we have decided to order a reversal upon another assignment, have thought it best not to express an opinion thereon.

Upon the trial in the court below, Mrs. Bean, a half-sister of Baker, was an important witness for the company to prove that her brother was born in 1845, and not in 1848, as stated by him. The witness purported to fix this date by the date of her first marriage, which she said was in the former year, her half-brother being then, according to her recollection, only a few weeks old. Upon cross-examination the witness was asked by appellee how often she had been married, to which she replied three times, giving the names of her several husbands. She was then asked if she had not stated in a former deposition taken in this case, and to the notary who took it, that she had only been married twice. To this question appellant objected, upon the ground that it was an immaterial issue, and therefore could not be used as a basis for impeachment. In reply, appellee stated that the evidence was also offered to test the memory of the witness, and show the extent to which it could be relied upon. The evidence was admitted, and was to the effect indicated by the question and objections.

In its brief, appellant seems to concede that it was permissible to test the memory of the witness in this way, but contends that it was the duty of the court to instruct the jury to consider the evidence for no other purpose. No charge of this kind was requested by appellant.

This was necessary, to entitle it to a reversal on account of the failure, if it be admitted that the evidence should have been so restricted, which we need not decide.   Walker v. Brown, 66 Texas, 556; Shumard v. Johnson, 66 Texas, 72; Railway v. Johnson, 72 Texas, 95; Railway v. George, 85 Texas, 158.

Mrs. Travers, a resident of Massachusetts, and a sister of Baker, testified by deposition in behalf of appellant, that her brother was born in 1845, and the statement of facts shows that Sam J. Hunter, in behalf of appellee, in rebuttal, testified as follows:

"I have met Mrs. Mary Travers, whose deposition has been read in this case.   I was there about the latter part of October, about the last days of October or the first days of November, 1892.   That was after her deposition had been given to the defendant in this case.   I saw her at New Bedford, Mass., at her home; she was lying in bed sick, and had been sick for some time.   Her daughters at first refused to admit me to the house.   I told them where I was from, and that I had a letter of introduction from her sister, Mrs. Sallie M. Baker, and I wanted to see her on an important matter, and they admitted me.   I had a conversation with her on that occasion with reference to the age of George W. Baker, and the deposition that she had given in this case with reference to his age.   I had her deposition with me, and showed it to her.   I had a conversation about retaking her deposition with reference to the age of George W. Baker.   I did have a conversation with her about retaking her deposition in this cause with reference to the age of George W. Baker, and with reference to the deposition she had previously given.   After my interview with Mrs. Travers spoken of in my previous answers I made efforts to take her depositions in this case.   I prepared interrogatories to her on the subject of George W. Baker's age, and filed them with the clerk of this court, and took commission on them on the 17th day of November, 1892; that was the date of the commission.   I sent them to New Bedford, Mass.   They were never answered.   I sent money with them to pay expenses and everything. They were never answered by Mrs. Travers.   I do not know whether Mrs. Travers is now living or dead, except what Mrs. Bean stated on the stand yesterday.   She said that she had passed over.   I suppose from that she is dead; she meant that Mrs. Travers was dead."

Sam J. Hunter, recalled by the defendant, testified (examined by Mr. Miller): "I stated that Mrs. Bean testified that Mrs. Travers is dead.   I do not remember the date she said she died.   I do not remember that Mrs. Bean stated she died in May or June of this year (1893); I believe that is what she says there.   These interrogatories were filed on the 7th of November, the date of the commission.   The interrogatories to her, I promptly sent them on.   I did not send them to lawyers there.   I think I sent them direct to Mrs. Mary Travers herself, or to her daughter, Miss Irvia Travers.   I remember, because I had some correspondence with her.   I sent them to her maiden daughter living with her.   I sent her money, fifteen or twenty dollars.   I think I

required the attaching of the family Bible; or that is, the sealing of it, and the payment of express and the cost of sending it, and I think I sent her fifteen or twenty dollars to cover everything; more than necessary."

The bill of exceptions taken by appellant shows that this witness was also allowed to read to the jury the interrogatories referred to as having been propounded by him, among which was the following:

"Int. 4.  If, in answer to the preceding interrogatory, you state that you did give your deposition to the defendant in this case, and did testify that G. W. Baker was born March 11, 1845, then please state upon what your statement was based, whether upon memory or upon any paper of any kind shown to you, or upon anything else shown to you, and if any and what it purported to be, and who showed it to you, and who did the parties represent that showed the paper to you, if anybody.    State fully all about it.

"Int. 5.  What was said to you, if anything, by the parties who showed you the paper as to what it was?   State fully, and state who was present when your deposition was taken and written down by the officer, and state whether this paper, if any, was shown you, was before you at that time or not.

"Int. 6.  Did you, at the time of giving your deposition, or did you not, have any recollection or memory as to the date of G. W. Baker's birth, independent of the paper or copy shown to you, if any was shown to you?

"Int. 7.  State what induced you to answer in that deposition that George W. Baker was born March 11, 1845.

"Int. 8.  Did George W. Baker ever join the army?   If so, state how he got into the army; and if there is any family history concerning his age at the time he joined the army, state what it is."

The statement of facts is agreed to by counsel and approved by the court as containing all the evidence introduced upon the trial, and we have heretofore followed the rule adopted by our Supreme Court of allowing a statement so verified to control the bill of exceptions, in order to support the judgment.   Byers v. Wallace, 87 Texas, 503, and cases there cited.

But after giving appellee the benefit of this practice, we are still of opinion that reversible error is shown by the admission of this evidence.   That the evidence was irrelevant and immaterial we think there can be but little question.   That the testimony of a witness can not lawfully be impeached or discredited in the manner here attempted, we think equally clear.   The weight that the jury, unacquainted with the law, attached to it can not be ascertained.   It was admitted by the trial judge as legal evidence for their consideration, and in all probability they regarded it as sufficient to authorize them to altogether disregard the depositsion of Mrs. Travers, upon the ground that she had subsequently recanted her previous statements.   The issue was perhaps the most material one in the case, and the legitimate evi-

dence bearing thereon was at least evenly balanced in favor of appellant. Under such circumstances the practice is to reverse.

In Eborn v. Zimpleman, 47 Texas, 522, it is said: "As we can not say that the improper evidence did not operate to appellant's prejudice, this error entitles appellant to a reversal." Also in Ross v. Kornrumpf, 64 Texas, 395, this language is used: "Had the case been tried before the judge alone, we might presume that the illegal testimony was discarded by him in making up his decision. But when submitted to a jury it must appear that it could not have possibly influenced the verdict; that had the testimony been rejected, the jury could not have found differently. Such is not the case here. Each party had produced evidence sufficient to establish his side of the question at issue. In such a case a feather's weight of illegal testimony must not be thrown into the scales to turn them in favor of either of the litigants." Also see Railway v. Rowland, 82 Texas, 166.

Without adopting all the adjectives used in the quotation from Ross v. Kornrumpf, we will say that the rule announced in Eborn v. Zimpleman has been often approved in this State, and seems to us sound. Appellee contends, however, that this evidence was in effect supplied by other witnesses, and therefore should not require a reversal, even though erroneously admitted. The evidence referred to is that of appellant's attorney, Mr. Fiset, to the effect that a certified copy of the record at East Machias, made by its custodian, which showed the date of Baker's birth to have been March 11, 1845, had been shown the witness before her deposition was taken. Also, Mrs. Bean testified to having received a letter from Mrs. Travers, to the effect that the record at East Machias showed this date as stated, and cautioned her against swearing otherwise.

We do not think the jury would necessarily from this conclude that the copy referred to was the only data from which Mrs. Travers was enabled to fix the date of her younger brother's birth. Counsel for appellee, evidently realizing the importance of establishing this to be the fact by legal evidence, propounded interrogatories to the witness, *which plainly indicated that she was expected to state that a paper of some kind had been shown her from which this date was obtained, and that she did not otherwise remember it;* and failing to obtain the expected answer in a legal way, they attempted to supply them by testifying to the jury that they had talked to the witness before propounding the questions, leaving them to infer what she had said her answers would be. We can not approve this as legal evidence for any purpose. Neither do we think the improper inference the jury was thus expected to draw was rendered unimportant or less probable by the introduction of the other testimony referred to.

One of the questions and answers of Baker contained in the medical examiner's report is as follows:

"24. Family record of the applicant:

| | LIVING | | DEAD | | |
|---|---|---|---|---|---|
| | Age | Health | Age | Specific cause of death | How long sick |
| Brothers ....... | 56 .. | Good ... | ...... | ......................... | .............. |
| | 54... | Good ... | 35... | Broke blood vessel while lifting—apoplexy..... | Few days. |
| Sisters........ | 48... | Good ... | ..... | .....,. ................. | ...... ....... |
| | 50... | Good .. | 3... | Unknown............ | Unknown |

It is claimed that this answer was untrue, and the policy therefore void. The evidence does show, that in 1831 there was born to the parents of the insured a boy, who was christened Henry B., who died in 1833, when he was about two years old. This was about fifteen years before the birth of George W., the insured, and the evidence justifies the inference that the latter knew nothing of the occurrence. It also shows, that there was in 1843 born to the same parents a girl, Harriet A., who died about fourteen months thereafter, and that between this girl and George W. there was another child, who died almost immediately after its birth. It was never named, and its sex is not known. The contention is, that the failure to mention the death of the infant boy Henry B. constitutes a false answer within the meaning of the policy and application. It is not pretended that this information would have been of the slightest importance to the company, but its position is, that materiality has nothing to do with the question; that as a man binds himself so shall he be bound; that the law gives it the pound of flesh, and it proposes to take it.

An examination of the numerous questions contained in this application will satisfy any one, that for an ordinary business man to give a full and literally truthful answer to all of them would be next to an impossibility. It therefore becomes material to first inquire as to the real meaning of the question, and we will then be the better prepared to decide as to the truthfulness of the answer. In arriving at the meaning of questions in contracts of this kind, it is manifest that we must place ourselves as nearly as we can in the position of the contracting parties, and endeavor to carry out their intentions in the premises, and in doing this each substantial doubt must be solved in favor of the insured and against the insurer, inasmuch as it is its language we are called upon to construe.

It has consequently been repeatedly held that inquiries as to the health of the applicant, etc., do not include every slight headache or nausea which the applicant may have suffered during his life, even though they be embraced within the literal meaning of the words used in the question, but only such as amount to a disease, and are there-

fore proper subjects of inquiry as affecting the risk.    Ins. Co. v. Simpson, 88 Texas, 333, and cases there cited.

The company, in propounding the question, is understood to be actuated by an honest desire to acquire such information as will enable it to intelligently decide as to the desirability of the risk; and if the applicant, where general terms are used in making the inquiry, so interprets it, and gives faithful and true answer to the question as so understood by him, and as really meant by the insurer, he should be held to have spoken truly and not falsely.    We desire to emphasize the statement, that this is especially true where the company has used such general or vague terms in framing the question as to render it impossible or even difficult for the applicant to understand its full scope and meaning.    Moulor v. Ins. Co., 111 U. S., 335.    In such case, where the answer really contains all material information, the courts and juries should seek and apply every reasonable interpretation that will prevent a forfeiture from a failure by the applicant to state that of which he had never heard, or that which he knew was of no importance, and therefore honestly believed by him not to come within the meaning of the interrogatory.

Applying these principles to this answer, and what have we?    The question is, "Family record of the applicant," followed by some lines and a few catch words, which those acquainted with the business might understand as intended to call for specific information as to the brothers and sisters of the applicant, but which a novice would probably not understand at all, and which every one would understand as only intended to elicit such information in reference to the applicant's family as might reasonably affect the risk.    This information appellant practically admits it received, and we think it should be held that the question—what was really meant and intended by it—was truthfully answered.    We are also of opinion, that the real meaning and scope of the question was so doubtful that the court did not err in leaving it to the jury to decide as to whether or not it had been truthfully answered.

Appellant introduced in evidence a certified copy of the town records of East Machias, Me., which stated the date of the birth of George W. Baker as March 11, 1845, and appellee over objection was permitted to prove by witnesses who had examined this record, and by photographic copies thereof, that this date, as written therein, had more the appearance of 1855 than 1845.    In this we find no error. The certificate of the custodian when authorized by law is ordinarily the best evidence of the contents of a record, but when there is a controversy as to which word or figure is meant by a particular character found therein, we can not assent to the proposition that the statutory certificate of the custodian must be accepted by the parties as a conclusive solution of the question.    In such cases expert witnesses should be allowed to give their opinions; and if the record can be produced in court, this should be done, and the judge and jury afforded an op-

portunity to inspect it for themselves as in ordinary cases involving disputed handwriting, etc. If the record can not be produced, witnesses should be allowed to make, by the use of instruments or otherwise, copies or pictures thereof, and to explain to the jury the points of similarity or difference between these and the original as it appears to them. It is manifest the art of photography can be made to render valuable assistance to the jury in solving such questions, and we think was properly called into requisition in this case. We regard the evidence of the witnesses in explanation of the pictures so made and introduced as sufficient to authorize their consideration by the jury for what they were worth, regardless of whether they were made with a first or second class instrument. In McCamant v. Roberts, 25 Southwestern Reporter, 732, we held, that where the Commissioner of the General Land Office was in doubt as to a name in an instrument, in certifying a copy thereof it was proper for him to make the character as nearly like the original as possible, and leave the ultimate solution of the question to the jury.

At the trial in the court below, "the defendant (appellant) by its attorneys admitted that the plaintiff (appellee) had a good cause of action as set forth in her petition, except so far as it might be defeated in whole or in part by the facts of the answer constituting a good defense, which may be established on the trial," and was thereupon awarded the opening and conclusion in the introduction of evidence and in the argument before the jury. In her petition, appellee claimed $272 as having been paid as premiums through mistake, and also $6000 reasonable attorney's fees. Appellant, in addition to a general denial, denied specially the alleged mistake in the payment of the $272, and also the reasonableness of the amount claimed as attorney's fees, and at the trial offered evidence to show that the first amount was justly due and properly paid, and that $3500 would be a reasonable compensation to appellee's attorneys. This evidence was rejected by the court, upon the ground that appellant was concluded by its admission aforesaid.

On the part of appellant, it is contended that its admission under the rule (District Court Rule 31) only had the effect to impose upon it the burden of proof, by making for appellee a prima facie case, and that it had the right to rebut this by the introduction of any evidence that would have been admissible under its pleading, had the trial proceeded in the usual way. On the part of appellee, however, it is claimed that this admission in effect waives the general denial, and precludes the defendant as to all matters not specially pleaded in the nature of a confession and avoidance.

The decisions of our Supreme Court, the tribunal that made the rule, throw but little light upon the question, but seemingly tend to support the latter view. Smith v. Bank, 74 Texas, 541; Sanders v. Bridges, 67 Texas, 93; Alstin v. Cundiff, 52 Texas, 453. We incline to think this construction was correctly adopted by the court below,

for otherwise a defendant could in all cases of disputed value and the like obtain a material advantage (the opening and conclusion) by a simple admission that plaintiff could make a prima facie case.

Numerous other assignments have been presented in the briefs, which we deem it unnecessary to consider at this time.

Reversed and remanded.

*Reversed and remanded.*

Delivered May 22, 1895.