PAYNE et al. v. SNYDER.

(Court of Civil Appeals of Texas. San Antonio. Nov. 19, 1913. Rehearing Denied Dec. 10, 1913.)

1. TRIAL (§ 255*) — INSTRUCTIONS — REQUEST TO CHARGE.

Where declarations of one of several defendants in a suit to set aside certain conveyances of land for fraud and collusion were admissible against the declarant, it was not error for the court to omit to charge that the evidence was inadmissible against the other defendants, in the absence of a request by them so to charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

2. VENDOR AND PURCHASER (§ 244*)—FRAUD—BONA FIDE PURCHASER—EVIDENCE.

In a suit to set aside certain deeds by which valuable land had been obtained from complainant in exchange for certain worthless stock in an insolvent corporation and later conveyed to defendant E., evidence *held* to justify a finding that E. was not a bona fide purchaser; he knowing that all of the other defendants participated in or had knowledge of the fraud.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

Appeal from District Court, Brazoria County; Louis J. Wilson, Special Judge.

Suit by Mary C. Snyder against L. H. Payne and others. Judgment for complainant, and defendants appeal. Affirmed.

Lane, Wolters & Storey and Wm. A. Vinson, all of Houston, for appellants. Munson & Munson and Masterson & Rucks, all of Angleton, for appellee.

FLY, C. J. This is a suit instituted by appellee, a widow, of Franklin county, Ohio, against L. H. Payne, William J. Brewer, Evan A. Evans, and John T. Evans to cancel certain deeds made by her to Payne and Brewer, by Brewer to Payne, and by Payne to Evan A. Evans. She alleged that the deed from her to Brewer and Payne was obtained by certain fraudulent representations made by appellants, by which she was induced to part with her title to her land in exchange for 30,000 worthless shares in the Genoa Orange & Fig Company, which was insolvent and owned no property, that Evan A. Evans and John T. Evans were parties to the fraud, and that, in pursuance of the fraudulent, design of the conspirators, the deed was obtained from her, then Brewer sold to Payne, and immediately Payne sold to Evan A. Evans. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee as against all the parties except John T. Evans. This appeal was perfected by Payne, Brewer and Evan A. Evans, but no brief has been filed in this court except in behalf of Evan A. Evans, and it will be proper to consider this case on the theory that as to Brewer and Payne the judgment is fully sustained by the law and the facts, as the record clearly indicates.

[1] The assignments of error from the first to the eighth inclusive assail the action of the court in admitting the declarations of William J. Brewer, the proposition being that such declarations, having been made after Brewer had parted with the title to the land in controversy, and not made in the presence of L. H. Payne or Evan A. Evans, were inadmissible, as against them, to establish fraud and collusion or a conspiracy. The evidence may have been inadmissible so far as Payne and Evans were concerned, but it was admissible as against Brewer. This proposition is acceded to in the brief of appellants wherein it is stated: "We are not contending that this testimony was not admissible as against Wm. J. Brewer as tending to show fraud on his part and misrepresentations to Mrs. Snyder, inducing the execution of the original agreement. If it had been so limited, we would now have no complaint to urge, but the court unquestionably admitted it as against Evan A. Evans. * * *" The testimony might properly have been limited in its operation and effect to Brewer, but the duty devolved upon appellants to request a charge so limiting it, and, having failed to request, such limitation will not be permitted to profit by the failure of the court to limit the scope of the testimony. Shumard v. Brown, 66 Tex. 72, 17 S. W. 398; Walker v. Brown, 66 Tex. 556, 1 S. W. 797; Railway v. Johnson, 72 Tex. 95, 10 S. W. 325; Railway v. George, 85 Tex. 158, 19 S. W. 1036; Ins. Co. v. Baker, 10 Tex. Civ. App. 515, 31 S. W. 1072; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507. The assignments of error are therefore, overruled.

[2] The only remaining assignment of error questions the sufficiency of the evidence to sustain the verdict of the jury as to Evan A. Evans. The evidence clearly indicates that a fraud was perpetrated by Payne and Brewer, officers of the Genoa Orange & Fig Company on appellee, and that her tract of 190 acres of valuable land was conveyed by her to Payne and Brewer for a lot of worthless stock in an insolvent corporation; that the brother of Evan A. Evans, who was also his attorney, living in his home with him, drew all the papers in the transaction, and knew that the land was being conveyed for stock that was utterly worthless. The contract of sale was drawn by said attorney, and on the same day Brewer sold his interest in the land to Payne and the latter sold the land to Evan A. Evans. All of these transactions took place on the same day, except the execution of the deed by Mrs. Snyder. Evan A. Evans claims that he was a purchaser, without notice, for value. While the contract of sale was being prepared in Chicago, Brewer stated to Mrs. Snyder that

Evan A. Evans was an owner of some of the stock. This statement was made in introducing the attorney, John T. Evans, who Brewer said was a brother of Evan A. Evans. Brewer represented that Evan A. Evans was a banker, and would be a director of the company. Those representations were not challenged by the attorney and brother of Evan A. Evans. Payne was an old acquaintance of Evan A. Evans, and had been connected with him in business during 11 or 12 years. Evans testified that, prior to March, 1911, the month in which the land in controversy was sold to him by Payne, he had some knowledge of the affairs of the Genoa Orange & Fig Company, and had discussed its affairs with Brewer and Payne three or four times. They tried to interest him in the promotion of the company. Evans had never seen the land when he bought it. The deed from Payne recited that the consideration was $1 and other considerations; and, although Evan A. Evans testified that he only paid a part of the purchase money in cash, no vendor's lien was retained. Brewer swore that he had discussed the affairs of the company with Evan A. Evans, and he was to advance money towards the development of the company's plans. The testimony of John T. Evans shows that he must have known that the Genoa Orange & Fig Company was heavily involved on the day he drew the dissolution papers between Brewer and Payne in which the Snyder land was conveyed to Payne. He must have known the company was heavily indebted. Evan A. Evans admitted that he had talked with Brewer and Payne about the company's affairs. He stated that Brewer and Payne wanted to tell him about the financial condition of the company, but he would not let them do so. He bought the land without seeing it or knowing anything about it. The note executed by Evan A. Evans was for $36.65, but he testified that the word, "hundred" was omitted by mistake, and that it was paid off without him or his bookkeeper discovering the mistake. He knew that the consideration paid to Mrs. Snyder for the land was stock in the company, although he swore positively, after some evasion, that Payne and Brewer had not told him that the land had been obtained by them in exchange for stock in the Genoa Orange & Fig Company. He testified through his deposition that he "knew that Payne & Brewer had gotten this tract of land from some one in Columbus, Ohio, on a business deal involving some stock in the Genoa Orange & Fig Company," but tried to evade the issue in his testimony at the trial. He also testified on the trial that he bought the land at the time that Payne first proposed to sell it, but in his deposition he stated that Payne spoke to him about selling it four or five days before he bought it. There was testimony tending to show that Payne obtained an option on the land on the day he sold it to Evan A. Evans. The latter knew that Brewer had sold his part of the land to Payne. The note, if paid at all, was paid after this suit had been instituted and full notice given, and was paid to a man who did not testify, and it was not shown to Evan A. Evans that he paid anything for it. Who Davidson was did not appear, but Payne was with him when the note was paid. It was paid without any questions being asked of Davidson or of Payne, although this suit had been filed some time before, charging a conspiracy to defraud Mrs. Snyder. When the deposition of Evan A. Evans was taken, by the appellee, he stated that he did not know where the note was. He produced it at the trial. That statement was made on February 21, 1912, and yet John T. Evans swore that he and his brother had located the note in Galesburg, Ill., in September, 1911, and said he knew it was there in February, 1912. Payne swore that he told Evan A. Evans about getting the land from appellee before he sold to Evans, and that after the sale Evans said: "Payne, I am going to make you my agent, and turn the place over to you as my agent, and handle it as your own." Afterwards Payne came to Texas and told Phillips, who lived in Angleton, Tex., that he owned the place, had traded for it. He afterwards rented the place and treated it as his own, although he swore he was acting for Evan A. Evans. Payne swore he told Evan A. Evans all about the affairs of the company, and about 2,400 acres of land it had bought from Dr. Knox. John T. Evans, the brother and attorney of Evan A. Evans, knew that Brewer and Payne had traded 30,000 shares of stock to appellee for the land, which they had told her were worth $30,000, and yet immediately Payne sold the land to Evan A. Evans for $5,665.

The circumstances show that a fraud was perpetrated upon appellee, and point to the further fact that both the Evans were parties to it, and that the conspiracy was so arranged and executed that the role of innocent purchaser could be assumed by Evan A. Evans, and the property covered up and held for the benefit of the parties to the fraud. It is seldom that a conspiracy can be proved by direct evidence, but resort must be had to circumstances which often, when combined and linked, form "proof as strong as Holy Writ." The circumstances in this case lead irresistibly to the conclusion that Evan A. Evans was acquainted with all the facts about the Genoa Orange & Fig Company of which his friend of many years and associate in business was cognizant, and that he was a party to the scheme of passing the title to the land from one to another of the conspirators until they had it in a position where they concluded that the role of innocent purchaser could be staged and played. Evan A. Evans had enough facts to put any sane man on notice, and his testimony clearly indicates that he is a shrewd, vigilant

business man. It is utterly improbable that he talked with Brewer and especially his friend, Payne, several times about the company's condition and did not ascertain anything. He must have been cognizant of the whole scheme to defraud appellee out of her property.

Appellant Evans states, if this court concludes that there were circumstances putting him upon inquiry, that it must be further held that inquiry would have led to notice of the fraud, and asks the question: "If there were facts or circumstances putting Evan A. Evans upon inquiry, where would they have led him?" They might have led him to Texas, where he could have ascertained all the facts; they might have led him to his friend, Payne, who Evans testified wanted to tell him all about the financial condition of the company, and who might have disclosed to him the fact that a fraud had been perpetrated upon an unsuspecting widow. He could have ascertained the facts if he had desired, if he was not already in possession of all of them and a party to the fraud.

The judgment is affirmed.