### CRESS v. HOLLOWAY.†

(Court of Civil Appeals of Texas. Jan. 14, 1911. Rehearing Denied Feb. 18, 1911.)

1. EVIDENCE (§ 441*)—PAROL EVIDENCE—ACTIONS—ADMISSION OF EVIDENCE.

Where defendant agreed to convey land pursuant to an escrow agreement authorizing a third person to deliver the deed to plaintiff upon approval by the attorney of the parties and the payment of the purchase-money note, and defendant claimed that the attorney decided adversely to the sufficiency of the deed deposited in escrow, evidence was not admissible for plaintiff of a parol agreement with defendant, made when the escrow was executed, by which· the parties were to furnish abstracts in addition to the deeds deposited in escrow, and the attorney was to pass upon the sufficiency of title after· examining such abstracts in connection with the deeds; such evidence varying the terms of the escrow agreement. ·

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2032; Dec. Dig. § 441.*]

2. EVIDENCE (§ 441*) — PAROL EVIDENCE — VARYING CONTRACTS—ESCROW AGREEMENT.

The escrow agreement was not ambiguous, so that in absence of allegations of mistake or fraud in executing it, whereby the agreement shown by the parol evidence was omitted, such evidence was .not admissible to add to its terms.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

3. FRAUDS, STATUTE OF (§ 158*)—CONTRACTS RELATING TO LAND—PAROL CONTRACT.

Where a written escrow agreement provided for the delivery of the deed upon approval by an attorney of the deeds deposited with the · escrow holder, a contemporaneous parol agreement by which the parties were to deliver other abstracts which were to be considered in connection with the deeds deposited in passing upon the title could not be ingrafted upon the written agreement and enforced without violating the statute of frauds (Sayles' Ann. Civ. St. 1897, art. 2543), unless the escrow agreement was first reformed, so as to embody the terms of the parol agreement.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 375; Dec. Dig. § 158.*]

4. WITNESSES (§ 319*)—ESTOPPEL TO DENY CREDIBILITY.

Where plaintiff, in an action of trespass to try title, defended on the ground that the at-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

135 S.W.—14        † Writ of error denied by Supreme Court March 29, 1911.

torney authorized in the escrow agreement executed to pass upon the sufficiency of the title to be conveyed decided adversely to plaintiff's title, successfully resisted the introduction of evidence by defendant to impeach the good faith of the attorney in a second decision rendered by him, approving the title, plaintiff thereby vouched for the attorney's good faith in the entire transaction.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1087–1093; Dec. Dig. § 319.*]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Action by Arthur L. Holloway against John A. Cress. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

J. W. Parker, McKenzie & Brady, and Stephens & Miller, for appellant. Hefner & Hudson, for appellee.

DUNKLIN, J. John A. Cress has appealed from a judgment rendered against him in favor of Arthur Holloway for certain real estate situated in Reeves county and the value of a stock of merchandise situated thereon. There were two suits, one for the real estate and one for the personal property. The suit for the land was in the form of trespass to try title and was the only one tried. The judgment in the suit for the personal property was rendered under and by virtue of a written agreement by the parties that judgment in that suit should abide the judgment in the suit for the land, and judgment in both suits was embraced in one and the same order.

The material facts developed upon the trial were substantially as follows: Holloway and Cress entered into a parol agreement for the exchange of properties; Holloway agreeing to convey real estate situated in New Mexico, where he resided, and Cress agreeing to convey the real estate in controversy, together with a stock of merchandise situated in Reeves county, Tex., where he resided. Following the parol agreement for exchange, the parties executed and delivered to G. M. Cooke the following escrow agreement in writing for the purpose of effecting the proposed exchange: "Mr. G. M. Cooke, Cashier First National Bank, Carlsbad, N. Mexico—Dear Sir: You are authorized by the undersigned, upon approval of the inclosed deeds by our attorney, Mr. Bujac, and the payment of the within note for $1,000.00 made payable to John A. Cress, to deliver to Mr. Holloway the deed to him from John A. Cress and to Mr. Cress the deed to him from Mr. Holloway. [Signed] Arthur Holloway. [Signed] John A. Cress." This written agreement was entered into on or about February 14 or 15, 1909, and on March 20th following Mr. Bujac, the attorney named in the agreement, wrote to Cress the following letter, which was duly received by Cress: "Carls-

bad, N. M., March 20, 1909. Mr. John A. Cress, Orla, Texas—Dear Sir: As per your request of yesterday, I, to-day, examined the papers in the Holloway-Harris-Cress land transaction at the First National Bank and find: Arthur V. L. Holloway and Maud Holloway, his wife, executed a quitclaim deed, dated February 3rd, 1909, to John A. Cress, of Orla, Texas, March 3rd, 1909, conveying southwest quarter section 13, township 18 south, range 25 east, N. M. P. M., containing 160 acres, with all improvements and a one-third interest in and to an irrigation ditch and flood water from the Penasco 'river. You desire my opinion on this transaction and I am unable to express one because there are no papers here showing that the title the Holloways are conveying to you was ever vested in them, or if in them, then there is nothing showing the title to ever have been vested in their grantors. In other words: I cannot give an opinion upon real estate without an abstract and until you furnish a complete abstract to the above described land I cannot advise you of its status and, therefore, in the absence of an abstract I must advise you not to accept the deed. I inclose our bill to you in the sum of $25, which please remit. Yours truly, [Signed] E. P. Bujac." Later Holloway furnished the attorney an abstract of title to his property in New Mexico, and, after an examination of the same, Mr. Bujac instructed Mr. Cooke to deliver the deeds left with him in escrow to the respective grantees named therein upon payment by Holloway for the use of Cress $1,000 in liquidation of the note mentioned in the escrow agreement. This instruction was followed by Cooke, who mailed to Cress the deed executed in his favor by Holloway, together with a draft for the $1,000 paid by Holloway. About one week later he received back the draft, together with the Holloway deed, both of which were returned by Judge J. W. Parker, acting as attorney for Cress, and thereafter Cress refused to accept the same. Cress never furnished an abstract of title to his property, and none was demanded of him, Holloway informing the attorney at the time he furnished his abstract that he was satisfied with Cress' title to the Texas property. After receipt of the letter from Bujac shown above, Cress requested Cooke to return his deed, but the request was refused. Cress then paid to Bujac the fee for his services shown in Bujac's letter quoted above, and sold the stock of merchandise to Alexander. The court gave a peremptory instruction to the jury to return a verdict in favor of Holloway, and this instruction is assigned as error. We think this instruction was erroneous, and that the court should have given the peremptory instruction in favor of the defendant, which was requested by the defendant, and the refusal of which is also assigned as error.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The only pleading filed by Holloway was a petition in statutory form of trespass to try title. After introducing in evidence the deed from Cress to himself to the land in controversy, Holloway next introduced the written escrow agreement recited above, and then testified, in effect, that there was a parol agreement between himself and Cress made at the time the written escrow agreement was executed that he and Cress would each furnish abstracts of title to their respective properties, which abstracts were to be submitted to Mr. Bujac for examination, and that on such abstracts and the deeds mentioned in the escrow agreement the attorney was to pass upon the titles to the respective properties, and not merely upon the instruments deposited in escrow. Holloway further testified as follows: "I expected Cress to give me a perfect title to the land. I expected him to deliver to me such papers as would show a perfect title in the land. An abstract was to be procured. The reason we would not state that in that escrow agreement, I suppose, was that we just wanted to make it, that agreement, as short an instrument to the bank as possible. We both had confidence in one another that there was no use to put that in the escrow agreement. I had told Bujac what I wanted him to do, and that I considered settled it. I had some title papers there in the bank at the time we entered into the written agreement; had quite a number of deeds there; had some title papers pertaining to the New Mexico property at the time, some of which are deeds. Yes; in the escrow agreement, where it says the deeds are to be delivered to us, respectively, when Bujac passed upon the inclosed deeds, that clause in the agreement had reference to the deed I had on file with the bank." Appellee Cress testified as follows: "There was no such understanding as that there should be an abstract furnished at the time Mr. Holloway and I were talking about what was to be put in the escrow agreement. The understanding was that we were to have perfect title, and Mr. Bujac was to pass upon the title for us; inclosed in the envelope the deeds which convey the land down there one to the other. All the deeds I had pertaining to this land or ever had pertaining to this land up there was in it. The deeds was in there I think, except the one from Hughes. Hughes had his in the bank with the others. He had Hughes' deed in the bank with the escrow agreement some way. I do not understand it, but he went over to the bank and got it by executing his part of the contract with Hughes—got the Hughes deed." Proof of the adverse decision of Bujac under the written escrow agreement, after an examination of the title papers deposited in escrow and the election of Cress to accept the same, established a perfect defense to the prima facie showing of title in Holloway as evidenced by the deed from Cress to Holloway introduced in evidence by the plaintiff. Evidently the testimony offered by Holloway to show the parol agreement testified to by him was for the purpose of controverting in advance the defense, but this parol testimony tended to vary the terms of the written agreement, and was without effect at all events under Holloway's formal petition of trespass to try title. Watts v. Howard, 77 Tex. 71, 13 S. W. 966; Cavin v. Hill, 83 Tex. 76, 18 S. W. 323, and decisions there cited; Matador Land & Cattle Co. v. State, 54 S. W. 256. The escrow agreement in writing was not ambiguous, but was plain and specific in its terms. There was no allegation in the plaintiff's pleading of any mistake or fraud in drafting the escrow agreement, and, without some pleading of that character, he could not be heard to say that it did not contain the full agreement of the parties thereto. Even though a pleading of the character indicated had been filed by Holloway, there was no proof to support it, for his own testimony quoted above shows that the parol agreement testified to by him, if made, was omitted from the written agreement as a matter of convenience to the parties, and not through mutual mistake, accident, or fraud. To enforce such parol agreement without first reforming the written escrow agreement so as to embody therein the terms of the parol agreement would contravene our statute of frauds. Sayles' Ann. Civ. St. Tex. 1897, art. 2543.

The uncontroverted testimony shows that the second opinion upon the title rendered by Bujac was based upon the abstract of title furnished him by Holloway, and not upon the instruments deposited in escrow, and upon which he rendered his first decision. In other words, the testimony conclusively shows that the first decision rendered by the attorney would not have been changed but for the abstract furnished to him by Holloway. Mr. Bujac, who was introduced as a witness by Holloway, testified that he acted in perfect good faith in rendering his first decision, and his good faith in the transaction was not assailed in any manner by Holloway. Holloway successfully resisted the proposed introduction of certain testimony offered by Cress for the purpose of impeaching the good faith of the attorney in rendering the second decision, thereby expressly vouching for his good faith in the entire transaction.

For the reasons noted above, the judgment is reversed, and here rendered in favor of appellant.