**AMERICAN NAT. BANK OF WICHITA FALLS et al. v. HAGGERTON.**

**(No. 1961.)**

(Court of Civil Appeals of Texas. Amarillo. Nov. 15, 1922. On Motion for Rehearing, Feb. 28, 1923. Further Rehearing Denied March 21, 1923.)

**1. Trial ⬡⟹308—When allowing court reporter to read testimony to jury after case submitted and they retired, held not error.**

Where, after the case was submitted to the jury and they retired, but later requested a reproduction of testimony on a certain point on which they could not agree, and the trial judge permitted the court reporter to read a copy of testimony of witness on point called for by jury, defendant objecting to the reading unless all the testimony was read to the jury, but not objecting as to the qualification of the court reporter to read the testimony, *held* that, under Rev. St. art. 1963, the jury had a right to have the testimony reproduced upon the requested specified point only.

**2. Trial ⬡⟹308—Right to permit court reporter to read testimony to jury after their retirement held within court's discretion.**

Where, after the case was submitted to the jury and they retired, but later requested a re-

production of testimony on a certain point on which they could not agree, it was in the discretion of the trial court, where no demand or objection was made that the witness should take the stand and testify what his evidence on the point was, to permit the court reporter to read from his notes the testimony upon the requested point.

**3. Appeal and error ⬅⮞929—Presumed that jury remembered all testimony except that requested to be restated.**

The object of reproduction of testimony is to aid the memory of the jury, and when, after a case is submitted to them and they retire, they later request the reproduction of testimony on a certain point, the presumption is that they recollect all the testimony but that on the point asked to be reproduced.

**4. Courts ⬅⮞112—Court reporter's record becomes official record of court which judge and attorneys may use to refresh recollection.**

Under Rev. St. art. 1920 et seq., the court reporter's record as kept becomes an official record of the court, and a means is provided for attorneys and courts to use it as a means of reference to enable the trial judge or attorneys to refer to it; the safeguards thrown around it being the most accurate means of reproducing evidence had upon the trial.

**5. Trial ⬅⮞308—Statute authorizing witness to reproduce testimony held directory permitting reproduction of testimony in some other way.**

Rev. St. art. 1963, authorizing a witness to reproduce his evidence to refresh recollection of jury, does not exclude a reasonable or fair reproduction in some other way, the statute being directory; and hence, if in the discretion of the trial judge the witness' testimony be accurately reproduced by a sworn officer of the court such as a court reporter under the direction of the court, such procedure affords no ground for reversal merely because the method pointed out by the statute is not followed strictly, in the absence of objections

**6. Trial ⬅⮞308—Reproduction of testimony to jury by notes from court reporter, instead of recalling witness, held not material departure from statute.**

The testimony of a witness as taken down by a court reporter amounts to a deposition taken upon oral examination, the formalities designating one a deposition and the other testimony taken before the court being too immaterial to constitute a material departure to require a reversal for permitting a reproduction of testimony to jury by reading the court reporter's notes instead of recalling the witness, under Rev. St. art. 1963, in the absence of a showing of injury.

**7. Trial ⬅⮞350(2)—Refusal to submit special issue involving decision on question of law as well as fact held proper.**

The refusal to submit the special issue to the jury as to whether an abstract of title showed a good merchantable title *held* properly refused because it required the jury to decide a question of law as well as of fact.

**8. Frauds, statute of ⬅⮞118(2)—When a contract insufficient standing alone becomes sufficient by execution of subsequent writing referred to stated.**

A contract, note, or memorandum sufficient to satisfy the statute of frauds may consist of a writing which standing alone is insufficient for the purpose, and another writing which is referred to, and which, though not in existence at the time, is executed before action is brought.

**9. Frauds, statute of ⬅⮞118(2)—Description in assignment of lease referred to in contract to sell lease held to cure defective description.**

If a contract to sell a lease of oil land did not sufficiently describe the land to satisfy the statute, such defect is cured by a sufficient description in an assignment referred to in the contract, which assignment was to be placed in escrow.

**10. Vendor and purchaser ⬅⮞8—Vendor only required to have ability to convey title when conveyance demanded.**

It is not necessary for a vendor to be in a position to convey the land at the time the contract is entered into, provided he entered into the contract in good faith, and he is able to make the stipulated title at the time when by the terms of the agreement or by the equities of the particular case he is required to make the conveyance.

**11. Contracts ⬅⮞10(5)—If contract between vendor and vendee lacked mutuality because vendor had no title, such defect held cured by conveyance to vendee by owner.**

If there was a want of mutuality in an agreement between a vendor and a vendee, because of lack of title by vendor when contract to sell agreed upon, such want *held* cured by securing a conveyance from owner to vendee.

**12. Mines and minerals ⬅⮞74—Evidence held to show vendee knew vendor did not have title to an oil lease agreed to be sold.**

Where, in an action to recover $1,000 forfeit held in escrow by a bank under contract to sell an oil lease, wherein defendant interposed lack of mutuality on ground plaintiff had no title to land, evidence *held* to show defendant knew that title was in another.

**13. Evidence ⬅⮞91—Proper to place burden of proof on defendant where his pleadings admitted cause of action.**

Where defendant admitted (under District Court Rules, Rule 31, 142 S. W. xx) plaintiff had a good cause of action as set out in petition except in so far as defeated by answer, it was proper for the trial court to place the burden on defendant to prove his allegations.

**14. Damages ⬅⮞78(6)—When allowance of judgment for liquidated damages as specified in contract held not error, stated.**

Judgment for plaintiff for $1,000 as forfeit money *held* not error, where the clause in a contract to sell a lease specified that sum as liquidated damages in event of breach by either party, and no showing was made that the stipulated sum was unreasonable or what the extent of plaintiff's damages were.

---

⬅⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes .

**15. Pleading ⬦129(2)—Judgment for liquidated damages as pleaded held not error in absence of plea that damage was less.**

Where the amount of damages by reason of defendant's breach of agreement to buy a lease was alleged by plaintiff at $1,000, the amount named in the contract as liquidated damages, and defendant did not allege in avoidance that the measure of damages were unreasonable or that plaintiff had not been damaged to that extent, it was not error to render judgment for $1,000 for plaintiff.

**16. Partnership ⬦199—A partner making contract for benefit of firm can sue thereon in his own name or that of firm.**

If a partner makes a contract in his own name for the benefit of the firm, he can sue thereon either in his own name or that of firm.

**17. Partnership ⬦199—Dormant partner not necessary party plaintiff in action by copartner for breach of contract made by latter in his own name.**

If, when a partner contracted in his own name to sell a lease, his copartner was not known, the latter was not a necessary party plaintiff in an action against the purchaser for breach of contract.

On Motion for Rehearing.

**18. Pleading ⬦403(2)—Where answer supplied omission in petition, defect becomes unimportant even though demurrer to petition is overruled.**

Where plaintiff's petition fails to make a necessary averment of fact, but the omission is supplied by such an allegation in the answer, the defect in the petition is unimportant, and the appellate court is not justified in reversing the case for that reason.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by Robert L. Haggerton against the American National Bank of Wichita Falls and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Bonner, Bonner & Sanford, of Wichita Falls, for appellants.

Kay, Akin & Kenley, of Wichita Falls, for appellee.

HUFF, C. J. This suit was instituted by Haggerton, appellee, against the bank and G. C. Johnson, appellants, in the Seventy-Eighth district court of Wichita Falls, Tex., to recover the sum of $1,000 held in escrow by the bank under a lease contract between appellee and appellant Johnson. On the 29th day of January, 1920, Haggerton and Johnson entered into a contract whereby Haggerton sold and agreed to assign an oil lease to Johnson on 100 acres out of the center of the west half of the Geo. Leonard survey, in Montague county. Johnson agreed to pay therefor $10,000, as stipulated. Haggerton agreed to furnish Johnson or his attorney an abstract for examination showing good and merchantable title to said lease, to be furnished within five days thereafter, to have it examined, and if any defects be found in the title Haggerton was to be "advised of same in writing and objections not so made shall be deemed waived," and he was to have a reasonable time to have same removed, etc. Haggerton agreed to execute an assignment to the lease, which was to be placed in the American National Bank of Wichita Falls, and Johnson was to place $1,000 in said bank and the assignment and money to be held in escrow pending examination of title. If title was held good and merchantable, that sum was to be paid to Haggerton, and Johnson agreed on or before February 8, 1920, to pay into the bank an additional sum of $9,000, and the bank was to deliver the assignment to Johnson and the $10,000 to Haggerton. If Haggerton complied with the terms of the contract and Johnson failed or refused to pay, then the first payment, $1,000 deposited in the bank, was to be forfeited to Haggerton as liquidated damages for breach of the contract, and the bank was authorized to pay that sum to Haggerton. There was indorsed an agreement on the contract, extending the time for the completion of the contract to the 11th day of February, 1920, and providing for the reduction of the consideration to $6,600. An assignment was deposited with the bank, dated January 31, 1920, and executed by M. W. Flynt to G. C. Johnson, describing 100 acres out of the lease of a 400-acre tract in the Geo. Leonard survey; the description giving the metes and bounds of the 100 acres assigned. The appellee, in his petition, set out the execution of the contract and assignment by Flynt, which was deposited with the bank February 1, 1920; that owing to certain conditions the abstract was not furnished within the time specified in the contract, but was delivered within a day or two thereafter; that the parties to the contract, after the delivery of the abstract, changed the contract by writing, which was indorsed on the contract from $10,000 consideration to $6,600 and extending the time to February 11, 1920. This extension and change was duly signed by the parties to the contract. That appellee complied with his contract, but that appellants failed to perform. The appellee asked for judgment for the $1,000 deposited in the bank. The bank answered, admitting it held the money as alleged, but that both parties demanded it. It tendered the amount into court, to be paid to whom the court should adjudge the right. The appellant Johnson answered, first, that the appellee had a good cause of action as alleged, except as the same should be defeated by the answer of Johnson thereafter pleaded. This part of the answer seems to have been plead-

ed under rule 31 of the district courts. He further alleged that the land described 'in the assignment from Flynt was not the property appellee represented to appellant he was to get; that which was contracted for was represented by Haggerton as being close to a ,well being drilled, and derived its value from its proximity thereto; that the land described in the assignment was an entirely different tract and of, less value than that pointed out, for which reason appellant refused to accept the assignment; that appellee and his agents falsely and fraudulently represented that the land contracted for and then pointed out by him on the map as owned by him would be conveyed to appellant, but at the time for performance appellees tendered an assignment to an entirely different tract of land; that the rentals due on the lease to be assigned were due January 14, 1920, to the fee owner, but that appellant never presented any evidence in the abstract that it had been paid, though demanded by the appellant, etc.; that appellee did not own the lease when he made the contract or at any other time, but that it at all times was the property of Flynt, which was concealed from appellant; that appellee owned no oil or gas lease in Montague county, and the tender of the assignment was not a compliance with the contract.

The case was submitted on special issues. The jury returned answers favorable to the appellee, which are in effect: That appellant did not deliver to appellee a written opinion from his attorney, in which he pointed out an objection to the title in that it did not show the rentals were paid on the lease; that it was mutually understood between the parties at the time of the original contract, and at the time the change was made, that the 100 acres referred to in the contract, and the 100 acres described in the assignment, were one and the same; that the appellee had not either purposely or through mistake led appellant to believe that the 100 acres described in the contract was a different 100 acres, either wholly or partially, from the 100 acres described in the assignment. On the findings of the jury the court rendered judgment for appellee for the sum of $1,000. The necessary facts will be stated in further consideration of the propositions presented.

[1] Proposition 1 asserts error in the action of the trial court granting the request of the jury to have read to them by the stenographer a portion of Haggerton's testimony, after they had retired and after the case had been submitted to them. It is shown by the bill of exceptions, after the jury had retired to consider of their verdict, they returned into court and requested that certain evidence be reproduced or read, stating they could not agree thereon. The appellant Johnson objected "to any testimony being re-read to the jury or reproduced to the jury, of whatever character," and "Johnson especially objected to the reading of said testimony to the jury or having it read to the jury unless all of the testimony of the said Haggerton was read to the jury at the same time, insisting that no evidence of any kind should be reproduced or re-read to the jury." The procedure of the court was as follows: When the jury made the request, he caused counsel for the parties to come before the court. The court reporter was procured to type certain portions of the testimony. The trial court in granting the bill appended to it the following:

"After the jury had retired in the above cause to consider of their verdict, they made known to the court that they wanted to have reproduced the testimony of Haggerton on the point covered by the evidence set out above, and the, court thereupon summoned counsel for both plaintiff and defendant and had them present and then had the court reporter find in his notes the testimony of the said witnesses on the point called for by the jury and which he copied and read to the jury as above, and at the time the court reporter said that the testimony read and reproduced above was all of the testimony of the witness on said point"

The testimony set out in the bill is in question and answer form and is substantially the same as brought up in the statement of facts. It does not purport to be all of the testimony given by the witness while on the stand. It would not have been proper had the witness in person taken the stand to permit him to recite all his evidence. He could only give his testimony on the point inquired about as given by him while testifying. The objection urged in the court does not appear to have been that a court stenographer could not give the evidence or that only the witness could reproduce the evidence. The objection was to the reading or reproducing any evidence whatever. The objection was to the reading the testimony unless all the testimony was read to the jury. Clearly, under the statute the jury had the right to have such testimony reproduced upon request upon a specified point, and if the witness was recalled he must be directed to detail his testimony on the particular point of disagreement, and no other, and as nearly as he can in the language used in his examination. Rev. St. art. 1963; Campbell v. State, 42 Tex. 591. There can be no re-examination of the witnesses. In the case cited the court said:

"It may be insisted with much force that this article of the Code of Procedure is merely directory, and that the failure of the court to observe it is not a sufficient ground for the reversal of the judgment We certainly are not prepared to hold that every departure from the strict letter of this article will require a reversal of the judgment"

The object of the statute is not to elicit further testimony, but to reproduce the exact

testimony given by the witness on the stand. The statute is directory, since it only establishes a rule of procedure. A party complaining of its infraction in order to obtain a reversal by reason of the disregard of the rule must show he has been injured thereby. We believe the case cited by appellant, San Antonio Traction Co. v. Badgett (Tex. Civ. App.) 158 S. W. 803, recognizes that the statute is directory. In that case the trial court refused to permit the court stenographer to read from his notes. The Court of Civil Appeals refused to reverse on that ground and in doing so referred to the holdings of courts of other states as holding that the reading of the notes of the court reporter was not permissible. However, the court did say:

"If the court had ordered the jury to be brought into the courtroom, and had required the stenographer to read from his notes the disputed testimony, while there is no warrant in the law for such action, it might possibly be held such error as could not have injured any one, and consequently not sufficient to form a basis for a reversal."

In Moore v. State, 52 Tex. Cr. R. 364, 107 S. W. 355, there is a very strong intimation by the Court of Criminal Appeals, Judge Ramsey speaking for the court, that it would be proper to permit the stenographer to read his notes, saying:

"It was, of course, clearly the right of the jury to have the testimony requested read to them; but where, as in this case, they returned a verdict without pressing further their request, it must be assumed that it was no longer desirable or necessary to have their memories refreshed by having the testimony read to them."

[2, 3] As illustrating the principal involved we think the holdings of our courts in construing Rev. St. art. 1952, which in effect provides the court may, at its discretion, at any time before the conclusion of the argument, allow a party to supply an omission in testimony, it has been held the court may admit evidence after argument. Telegraph Co. v. Roberts, 34 Tex. Civ. App. 76, 78 S. W. 522; Railway Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Puckett v. City of Ft. Worth (Tex. Civ. App.) 180 S. W. 1115; Prescott-Phœnix Oil & Gas Co. v. Gilliland Oil Co. (Tex. Civ. App.) 241 S. W. 775. If the court takes evidence after the conclusion of the argument, it is held to be in the court's discretion, and, if no injury is shown, a reversal will not be had because not taken before argument closed. We think in this case it was in the discretion of the trial court, especially where there was no demand or objection that the witness should take the stand and testify what his evidence was on the point. As this record stands, the notes of the stenographer give correctly the testimony of the witness on the point called for, as it was given on examination. The witness, if he had been on the stand, could not have given it differently. The statement of facts agreed to by appellant and appellee shows the testimony reproduced was the same as given by the witness. The argument of inaccuracy, prejudice, or the like, on the part of the court reporter, loses its force when there is none shown or even an objection that his notes did not correctly state the testimony and when the facts show he did correctly state them. The object of reproduction is to aid the memory of the jury. The presumption is the jury recalled all the testimony but that on the point asked to be reproduced. The jury was entitled to that testimony together with other evidence in order to settle the issues of fact, and, unless it was then in their memory, could not consider it, and it was their right, as well as their duty, to have it reproduced. They could not agree without it, and mistrials are not to be encouraged. All the objection amounts to as made in the trial court was to the reproduction of the testimony unless all the testimony was reproduced. It was not objected that the witness only could reproduce.

[4, 5] Revised Statutes, art. 1920 et seq., authorizes the appointment of a court reporter who under the statute is a sworn officer of the court. He must be skilled in his profession and must be examined as to his proficiency and accuracy before appointment. His duties include the making of transcripts of oral testimony, keeping it for the inspection of the court and attorneys. His record as kept becomes an official record of the court. A means is provided for attorneys and courts to use or hold it as a means of reference. A trial judge or attorneys may use it as a means of refreshing their recollection, etc. The safeguards thrown around it would, it seems, be the most accurate means of reproducing evidence had upon the trial. It is not doubted but that all parties seeking to reproduce evidence would rely upon its accuracy more readily than the witness' memory of his exact statement, especially where the witness is an interested party. The statute does not expressly exclude it upon a request of the jury to have it read upon the point. All we think that may reasonably be said is that the statute does not expressly provide for reproducing the evidence by the court reporter. The statute, in authorizing the witness to reproduce his evidence to refresh the recollection of the jury, will not necessarily exclude a reasonable or fair reproduction in some other way. The statute is only directory in reproducing the evidence. If, in the discretion of the trial judge, it can accurately be reproduced by a sworn officer of the court and that officer does so under the direction of the court, especially where there is no complaint of inaccuracy or partiality and all parties are present in open court, we can conceive of no sound reason under our rules of

procedure why a case should be reversed simply because a method pointed out by the statute to guide the court is not followed strictly.

[6] It is suggested that the testimony taken before the court upon examination by parties and attorneys and duly noted by the court reporter is quite as authentic as the deposition of a witness taken before a notary which may be re-read at the request of the jury under article 1964. In fact, it in effect amounts to a deposition which may be taken upon oral examination. The formalities designating one a deposition with the certificate of a notary and the other testimony taken before the court are too immaterial to constitute a departure so serious as to require a reversal in the absence of a showing of injury resulting therefrom. The cases from other jurisdictions are not harmonious or reconcilable. In Missouri it is held the notes of the stenographer cannot be used to refresh the juror's memory. The reasoning in that case is strong, but we are not able to concur in the holding that a case should necessarily be reversed because of the use of the notes where the evidence as actually given was reproduced from the notes as this record demonstrates. Padgitt v. Moel, 159 Mo. 143, 60 S. W. 121, 52 L. R. A. 854, 81 Am. St. Rep. 347. A different view is expressed in the case of State v. Perkins, 143 Iowa, 55, 120 N. W. 62, 21 L. R. A. (N. S.) 931, 20 Ann. Cas. 1217. See, also, notes on the question in the above report. Freezer v. Sweeney, 8 Mont. 508, 21 Pac. 20; Darner v. Daggett, 35 Neb. 695, 53 N. W. 608; Roberts v. Atlanta, etc., 104 Ga. 805, 30 S. E. 966. We believe the assignment should be overruled.

[7] Propositions 2, 3, and 4 are based on three requested issues. The first asked if Johnson prior to February 11, 1920, advised appellee that the lease would not be purchased unless satisfactory proof was offered that the rentals thereon were paid; second, did appellee furnish satisfactory proof that all rentals had been paid before he would consummate the contract? Third, did the abstract show a good and merchantable title? It will be perceived in answer to an issue the jury found appellant did not deliver to appellee a written opinion by his attorney, which pointed out as an objection to the title the fact that it did not show the rentals were paid. It will be noted the contract between the parties stipulated that Haggerton should be advised in writing of any defect, and objections not so made should be deemed waived. There was a conflict in the testimony of appellant and appellee whether appellant objected orally to the abstract and whether there was any oral agreement that appellee should show the rents were paid and, if not so shown, the appellant would not be required to take the assignment. Under the contract the objection was waived if not in writing. The alleged agreement, made at the time the written contract was entered into, was an attempted contradiction of the written contract. If the oral agreement was had afterwards, there was no consideration for it. The evidence of appellee, which is uncontroverted, is the rents had been paid and the receipts were held at Nacona. The court having submitted the issue under the language of the written contract we think was sufficient. The third issue was properly refused because the jury was required thereby to decide a question of law as well as of fact. We think under the undisputed facts of this case and under the written contract the trial court submitted the issue raised and that it was not error to refuse the requested issues. Cress v. Holloway, 63 Tex. Civ. App. 590, 135 S. W. 209.

Propositions 5 and 6 are based upon the refusal to instruct a verdict for appellant, and that the verdict is contrary to the great weight of the testimony. This contention rests on the claim that the representations as to the location of the 100 acres to be conveyed was near an oil well and that the 100 acres described in the assignment was at a different point. The testimony upon this question may be conflicting, but there is evidence to support the finding of the jury.

[8,9] Proposition 7 is predicated on the insufficiency of the description of the land in the contract which is asserted rendered the contract nonenforceable under the statute of frauds. This may be true, but the contract called for an assignment to be placed in escrow with the contract and the money. The assignment is specific and definite, giving the field notes of the land. No complaint is made of the assignment on that ground. The pleadings show the assignment was on deposit about the first of February, and at the time of the extension agreement entered on the contract the appellee admitted the allegations under the rule. The jury found the 100 acres in the contract and the 100 acres described in the assignment were one and the same. The appellee did not plead the statute of frauds. "A contract, note or memorandum sufficient to satisfy the statute of frauds may consist of a writing which standing alone, is insufficient for this purpose and another writing which is referred to and which although not in existence at the time it is executed before action is brought." 27 C. J. § 309, p. 262, citing Freeland v. Ritz, 154 Mass. 257, 28 N. E. 226, 12 L. R. A. 561, 26 Am. St. Rep. 244. The contract effectually incorporated the terms of the assignment into the contract making the contract and assignment one entire instrument or contract which should be construed together. Peters v. Phillips, 19 Tex. at page 74, 70 Am. Dec. 319; Patton v. Rucker, 29 Tex. 402; McElroy v. Danciger (Tex. Civ. App.) 241 S. W. 1098, where several authorities are cited; Simpson v. Green (Tex. Com. App.) 231 S. W. 375. The latter

case we think will sustain the action of the court in upholding the contract against an assault on it on the ground that it was unenforceable because of the statute of frauds.

[10-12] Proposition 8 asserts an instructed verdict should have been given because at the time of the contract the lease was not owned by appellee, but was then in fact owned by Flynt, and by reason of which the contract is wholly unenforceable. As we understand the law, it was not necessary for the appellee to be in a position to convey the land at the time the contract was entered into, provided he entered into the contract in good faith. All that is necessary is that he be able to make the stipulated title at the time whenby the terms of the agreement, or by the equities of the particular case he is required to make the conveyance. Armstrong v. Palmer (Tex. Civ. App.) 218 S. W. 627, and authorities cited; Runnells v. Pruitt (Tex. Civ. App.) 204 S. W. 1017; Andrew v. Babcock, 63 Conn. 109, 26 Atl. 715; Martin v. Roberts, 127 Iowa, 218, 102 N. W. 1126. On the question of mutuality we believe the facts sufficient to show that it was understood at the time Flynt had the title to the lease and that appellee would be required to obtain an assignment from him. The holding in Burleson v. Burleson, 11 Tex. 2, we think applicable on this point. If there could be said to be a want of mutuality because of lack of title when the contract was entered into, it was cured by being performed in securing a conveyance by Flynt. Edwards v. Roberts (Tex. Civ. App.) 209 S. W. 247. The facts show that appellant knew appellee did not have title in himself at the time the contract was entered into, but that it was in Flynt; that Flynt's assignment was deposited with the papers and the money in the bank as part of the escrow. This was the condition when the contract price was reduced from $10,000 to $6,600 and giving further time. The reduction was obtained by argument that appellee was making too much on the sale. It is reasonably certain that both parties understood that appellee was not the owner but was authorized to sell, and that the appellant was not contracting for appellee's warranty, but that he waived it by accepting Flynt's assignment then on deposit as a fulfillment of the contract. We do not believe the court would have been justified in instructing a verdict on the contention under proposition 8.

[13] The ninth proposition asserts error in the charge of the court in instructing that the burden was on the defendant to establish his defense and refusing a requested instruction that the burden was on the plaintiff to establish the material allegations in his petition. The appellant admitted, under Rule 31 (142 S. W. xx), that the appellee had a good cause of action, as set out in the petition, except in so far as defeated by the answer. The record shows the appellant assumed the burden of proof, first offering his testimony. An early case, construing the rule, held:

"If these issues are properly admitted by the defendant, and he in reply, in the nature of a plea in confession and avoidance, takes upon himself the burden of proof to defeat the demand of plaintiff, then, having this affirmative burden, he should justly have the right to open and conclude" Alstin v. Cundiff, 52 Tex. 453; Insurance Co. v. Baker, 10 Tex. Civ. App. 515, 31 S. W. 1072; Ferguson v. City National Bank, 31 Tex. Civ. App. 238, 71 S. W. 604; Meade v. Logan (Tex. Civ. App.) 110 S. W. 188.

All of the above cases hold we think in effect the burden is on the defendant to prove the defense in avoidance, and some hold the admission "in effect waives the general denial and precludes the defendant in all matters not specially pleaded in the nature of the confession and avoidance." The trial court, under the admission, properly places the burden on the defendant to prove his allegation and correctly refuses his specially requested charge.

[14, 15] The tenth proposition asserts error on the part of the court in rendering judgment for $1,000, as it is asserted the undisputed evidence shows that he was not damaged in that amount. It is asserted in argument unless the appellee showed his damages the forfeiture clause should be held a penalty. The clause provides that the sum specified should be liquidated damages. There was no pleading on the part of appellee setting up that such amount was not the proper measure of damages, or alleging what would be the proper measure. The appellee set up the clause in the contract and sought a recovery for the amount under the clause, as liquidated damages. The evidence does not show that the stipulated damages were unreasonable. The damages may have been uncertain at the time of entering into the contract as to what they would be upon breach. It is not made certain that 10 per cent. on $6,600 would have been the extent of appellant's damages; neither is it shown what the value of the lease was when breached—whether it exceeded or was less than the contract price. The liquidated damage clause in contracts has been frequently before the courts, especially recently, and further discussion is unnecessary. We only refer to Walsh v. Methodist Church (Tex. Com. App.) 212 S. W. 950; Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061, 29 L. R. A. (N. S.) 303. The assignment we think should be overruled for the further reason that the amount of the damages was admitted by appellee under the rule. Appellant did not allege in avoidance the measure of damages set up in the petition were unreasonable or that appellee had not been damaged in that sum. Under the admission, if for no other reason, the court properly entered judgment for the amount.

[16, 17] Proposition 11 asserts fundamental error in that the evidence conclusively shows a defect of partie's plaintiff; that appellee and E. D. Kellar, were partners and jointly interested in the contract; that Kellar, for that reason, was a necessary and indispensable party. There was no pleading suggesting a nonrejoinder of necessary parties. The contract was with appellee individually. He was not a broker at the time, but kept a shoe shop, and Kellar appears to have been a partner in the shoe business with him. In a way the appellee did say that he expected to give Kellar part of the profits or to go fifty-fifty with him. We. do not think the evidence is sufficient to show conclusively a partnership in the lease contract. If a partnership was shown by the evidence if appellee made the contract in his own name for the benefit of the firm, he could sue either in his own name or that of the firm. Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30. The evidence indicates Kellar was not known in the transaction. If there was any partnership existing, he was dormant, and Kellar was not a necessary party. Boehm v. Calisch (Tex. Sup.) 3 S. W. 293; Townes, Texas Pleadings, p. 251.

We believe the judgment should be affirmed

### On Motion for Rehearing.

HALL, C. J. [18] At a former day of this term we reversed and remanded the judgment upon fundamental error in consideration of appellant's motion for rehearing. Our attention has been called to the fact that, although the original answer contains a general demurrer, it was not presented to the court, and, while the petition failed to allege that the plaintiff had tendered to appellant an abstract showing a good and merchantable title, the defendant alleged that this had not been done and assumed the burden of proof upon that issue. Having presented the issue and both parties having tried the case upon that theory in the lower court, we are convinced, upon reconsideration, that the judgment should not be reversed upon this ground. The rule is well established in this state that where the plaintiff's petition fails to make a necessary averment of fact, but the omission is supplied by such an allegation in the answer, even though where a demurrer to the petition upon that ground is overruled, the defect in the petition is unimportant, and the appellate court is not justified in reversing the case for that reason. Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270; M., K. & T. R. Co. v. Wickham (Tex. Civ. App.) 44 S. W. 1023; Zan v. Clark, 53 Tex. Civ. App. 525, 117 S. W. 892; Grimes v. Hagood, 19 Tex. 246; Hill v. George, 5 Tex. 87.

Our former opinion on motion for rehearing is set aside and withdrawn, and the judg-ment as announced in the original opinion is affirmed.

KLETT, J., not sitting.