**NEW YORK UNDERWRITERS' INS. CO. v. SHANKS et al.**
No. 10069.

Court of Civil Appeals of Texas. Galveston. Jan. 23, 1935.

Rehearing Denied Jan. 31, 1935.

King, Wood & Morrow and Newton Gresham, all of Houston, for appellant.

Follett & Hill and W. S. Sproles, all of Angleton, for appellees.

LANE, Justice.

Mrs. W. E. Shanks and others, as the sole surviving heirs at law of W. E. Shanks, deceased, brought this suit against New York Underwriters' Insurance Company, a corporation, to recover upon a policy of windstorm or tornado insurance in the sum of $1,200, issued by the defendant to W. E. Shanks and covering a dwelling house located near Angleton. W. E. Shanks died after the issuance of the policy but prior to the loss. Plaintiffs alleged that the house in question was damaged by a windstorm of severe intensity on or about August 13, 1932; that the house be-'fore the storm had an actual cash value of $2,500; and that the actual cash value immediately after the storm was $1,000. They further alleged that they had been unable to agree with the defendant on the amount of loss to their house, and that under the terms of the policy the amount of the loss had been submitted to appraisers. They charged that the appraiser appointed by the defendant and the umpire selected by the appraisers were neither competent nor disinterested; that they were partial to defendant, and biased in its favor, and prejudiced against plaintiffs; that the award of such appraisers was too small and should be set aside. After pleading the filing of proof of loss and demand, they alleged damages in the sum of $1,500 and prayed for recovery of the full amount of the policy. The policy of insurance sued on was attached to plaintiffs' petition as an exhibit and was made a part thereof.

The policy sued on was in full force and effect on August 13, 1932, on which date the house insured was damaged by a windstorm, hurrican, cyclone, and tornado. It contained the following recital:

"This company shall not be liable for any loss or damage caused by snow storm, blizzard, frost, or cold weather; nor for loss or damage occasioned directly or indirectly by or through any explosion, tidal wave, lightning, highwater, overflow, cloud-burst, theft," etc.

Plaintiffs alleged that the damage exceeded the amount insured against by the policy.

The defendant answered by a general demurrer and a general denial, and by way of special answer, pleaded an appraisement in accordance with 'the terms of the insurance policy, and an award of such appraisers in the sum of $166.70. The defendant tendered plaintiffs the amount of such award and asked that plaintiffs' recovery be limited to that amount.

The general demurrer of defendant was overruled by the court and the case proceeded to trial before the court without a jury, and at the conclusion of the evidence the court rendered judgment setting aside the award made by the appraisers selected, and awarded plaintiffs a recovery of $900 and interest thereon from the date of judgment.

The defendant has appealed.

By appellant's first assignment it insists that the court erred in overruling its general demurrer, in that plaintiffs failed to negative exceptions or excluded risks men-

1028

tioned in the policy sued upon, above set out in this opinion.

We overrule appellant's contention. The plaintiffs alleged that on the 13th day of August, 1932, while the policy was in full force and effect, the house covered by the policy "was damaged by a terrific windstorm, hurricane, cyclone and tornado, in excess of the amount insured against by the policy"; that after said damage had been done by said windstorm, defendant, under the terms of the policy, demanded an appraisal or arbitration of the damage; and that by reason of said demand plaintiffs and defendant agreed to select and they did select appraisers to adjust the damage caused by said windstorm.

In the answer of defendant it is alleged that after the insured building "had been damaged by windstorm," etc.

Such pleadings of both parties, we think, are in effect declarations that the damage sued for was damage caused by a windstorm only and none other. In such circumstances, a plea denying that the damage was not done in some other way seems to us to be entirely superfluous.

■ Again, it appears from the answer of appellant that appellant not only demanded an appraisement and arbitration, but admitted that the building covered by the policy had been damaged by windstorm, as alleged by plaintiffs. The demand for appraisers by appellant was an admission of liability for damage caused by a storm of the kind it had insured against; and an admission or confession that there was storm damage of some amount, for which it was liable under the terms of the policy, which might be determined by appraisers.

■ It is well settled that where plaintiffs' petition fails to make a necessary allegation of fact and such omission is substantially supplied by an allegation in the answer of the defendant, the defect in the petition becomes of no importance. Caddo Gas Co. v. Jeffries (Tex. Civ. App.) 271 S. W. 108; Chapman, Com'r of Ins. & Banking, v. Mooney (Tex. Civ. App.) 257 S. W. 1106; American Nat'l Bank v. Haggerton (Tex. Civ. App.) 250 S. W. 279, on motion for rehearing, page 286.

■ By appellant's second and third assignments, it is insisted that the trial court erred in setting aside the award made by the appraisers and in refusing to render judgment for plaintiffs for the amount only awarded by said appraisers, in that the evidence was insufficient to authorize the court to set aside said award if the appraisers were selected as provided in the policy.

We are not prepared to sustain appellant's contentions. The question of what damage was done by a windstorm to the insured building was submitted to the appraisers and in answer to such question they found such damage to be $166.70.

Dalton Hooper was selected as one of the appraisers by the insurance company and W. L. Baker was chosen one of such appraisers by the owner of the insured building, and these two, being unable to agree on the amount of damage, selected one Hagenah as umpire.

Appraiser Hooper testified in effect that in selecting an umpire he did not want one who lived in the vicinity of the plaintiffs' residence; that he could see no use in tearing the building down in order to relevel it; that it would be unwise to do so, and that he had never known of any one doing so in his career as an appraiser; that the proper procedure to follow would be to jack the house up; that he had never seen the building before he went out to inspect it for the insurance company; that when he inspected the building Baker and Hagenah were with him; that prior to the storm of August 13, 1932, he had been appointed as an appraiser for the Tarlton Adjustment Company on about three fire losses; and that since that storm he had inspected for various insurance companies over one hundred houses in Angleton and Freeport for storm damage. He stated it took him about one hour to examine one of these houses; that he received from $10 to $100 for each house inspected; the inspection of the Shanks house he thought was $43.50; that for a few less than twenty-five days he made $100 per day, but that he did not keep an account, but "just collected his money and throwed it away." He stated that he had no discussion with Shanks, and, if he said anything to him, he paid no attention to it.

Umpire Hagenah testified that he had not built a house since he went into the contracting business in Houston in 1929; that it had been three months since he employed a man to assist him, and then only one and he worked one day. Before that it had been about a year since he employed a man and then he employed two; that he did not look over the house the first time to see whether it was out of plumb and went back and found the storm did not put it out of plumb, but

that it was out of plumb and out of level; that he examined the weatherboards on the house, the corner boards and casings, and found that the joints were not open, they were still covered with paint and closed up, and he came to the conclusion the house was not put out of shape by the storm; that he went to look at the front porch the third time he went; that he never saw the house before the storm; that he made three examinations. The first time he examined the weatherboarding; the second time he examined the front porch; and the third time he looked to see whether the house was out of plumb; that he went over the house three times; that Mr. Hooper told him the first time to only examine the weatherboarding; that Mr. Hooper told him what the different items were; that Mr. Hooper did most of the talking; that Mr. Hooper, Mr. Baker, and himself never discussed the award and what it ought to be before they agreed to it or before Mr. Hooper told them what he thought about it; that Mr. Hooper nor Mr. Baker ever told him what they thought the damage ought to be; that Mr. Hooper made out the award; that witness estimated the damage at $4.25 and Mr. Hooper filled out the rest.

Appraiser Baker testified that Hooper contended that the storm did not put the house out of plumb, out of level; that Hagenah said it would take $4.25 to level the house; that Hagenah inspected the building only about three to five minutes and stated that two-bits worth of nails and $4 worth of labor would put the house back in tiptop shape.

Baker, testifying further, said:

"To put the house back in as good shape as it was in before the storm, it would have to be wrecked, torn down and rebuilt, and using the lumber saved it would cost to tear it down and re-build it $2,000.00. The material in the house after wrecking it would be worth $400 or $500 in re-building."

Witness Patterson testified that he had seen the house about two months before the storm; that as a carpenter of thirty-five years' experience he observed its condition and that he did not observe that it was out of plumb; that the doors appeared to be level; that he examined the house about two or three weeks after the storm and found it in pretty bad condition; that it was out of plumb and out of level; the roof practically all off of the east and north sides, and that the back side was pretty well all blown away; that the house was leaning in different directions; that none of the doors would open and close freely; and that the windows were in the same shape. He testified that the value of the house before the storm was about $2,500. To put it back substantially as it was before the storm, it would be necessary to tear it down, dismantle it. The house after the storm was worth $500 or $600; that he thought the house could be put back in pretty good shape, outside of straightening up, renailing, and bracing, for $480. That estimate was on a repairing job, not on putting the house in as good condition as it was in before the storm struck it; that he had been through all the storms there since the 1900 storm.

The carpenter Pete Lovall's evidence as to the effect of the storm was about the same as that of J. G. Patterson. He saw the house just before and just after the storm and stated it would have to be torn down and rebuilt to put it in substantially the same condition as it was in before the storm, and that it would cost from $1,200 to $1,500.

T. J. Shanks, the owner of the house, testified that the house was in good condition before the storm and in bad condition after the storm, and described its condition after the storm about as did Baker, Patterson, and Lovall.

At the request of appellant, the court filed his findings of fact and, among other findings, which are not necessary to be here stated, he found quite a diversity of opinion between the witnesses for plaintiffs and the witnesses for defendant as to whether said residence could be placed in substantially the same condition it was in immediately before the storm, without being torn down and rebuilt, but concluded as a fact from a preponderance of the testimony of disinterested witnesses that it would be necessary to tear down and rebuild the residence, using what material in the building was suitable and supplying new material needed; that the appraiser, Dalton Hooper, the appraiser named by the special agent of the defendant insurance company, had on many occasions acted as appraiser or adjuster for insurance companies, including the defendant herein, receiving compensation amounting to about $100 per day and expenses, and that he was not a disinterested and an unbiased appraiser; that the umpire, J. Hagenah, was inclined to follow the directions of the appraiser Hooper and did not take sufficient time and care to make a fair report of the loss and damage to the dwelling as a whole and did not act as a disinterested and competent umpire; that the damage of $166.70 awarded by Hooper and Hagenah was

grossly inadequate as damages done by the storm, and that said sum was arbitrarily fixed by them without taking into consideration the damage done to the dwelling by the storm in the twisting and leaning of the walls and unleveling of the floors; that the damage to said building caused as a direct result of said storm was $1,500; and that a depreciation of 40 per cent., or $600, should be allowed, making the amount of recoverable loss in the sum of $900.

As conclusions of law, the court states as follows:

"V. I conclude that Dalton Hooper was not an unbiased and disinterested appraiser as contemplated by the policy and the agreement executed by the parties under said policy for arbitration and was therefore a disqualified appraiser and known to be such by defendant company when he was appointed.

"VI. I conclude that the umpire, J. Hagenah, did not carefully and disinterestedly perform his duties as an umpire, but was influenced by the appraiser Hooper, and was therefore a disqualified umpire.

"VII. I conclude that the attempted award made by Dalton Hooper, appraiser, and J. Hagenah, umpire, should be set aside.

"VIII. I conclude that plaintiffs should recover of and from the defendant, as loss caused by said storm, the sum of $900.00, with 6% interest from the date of judgment rendered herein."

After a careful examination of the statement of facts, we conclude that there is ample evidence to support the findings and conclusions of the trial court. We therefore overrule appellant's assignments 2 and 3.

We ●also overrule appellant's assignment 4, which insists that the trial court disregarded the coinsurance clause of the policy sued on, and in entering judgment for the full amount of the damage found by the court.

Appellant, as defendant, did not plead such clause, nor did it prove facts to show that it was entitled to any reduction of the damages found.

The insurance policy was issued in August, 1931. By an act of the First Called Session of the Legislature in 1929 (Acts 1st Called Sess. 41st Legislature, c. 37, p. 84, § 1, Vernon's Ann. Civ. St. art. 4891), amending article 4891, Revised Civil Statutes, it is provided that the provision of the policy in the present case, urged as a defense, is void

since it sought to apply such clause to a private dwelling.

The house involved in this suit was a private dwelling. See Camden Fire Ins. Co. v. Wandell (Tex. Civ. App.) 195 S. W. 289.

For the reasons pointed out, the judgment is affirmed.

Affirmed.