## HARGROVE v. EDMONT HOTEL CO.
### No. 3277.

Court of Civil Appeals of Texas. Beaumont.
Feb. 16, 1939.

Morris & Bennett, of Beaumont, for appellant.

Smith, Smith & Boyd, of Beaumont, for appellee.

COMBS, Justice.

Appellant, H. M. Hargrove, as plaintiff, filed this suit against appellee, Edmont Hotel Company, as defendant, for damages for alleged breach of a contract entered into between the parties whereby Mr. Hargrove acquired an option to lease for a period of .seven years the Edson Hotel, owned by appellee, in the City of Beaumont. The appeal is from the judgment of the trial court sustaining a general demurrer to plaintiff's petition.

The sole question before us is whether or not plaintiff alleged a cause of action. The contract in question was entered into March 15, 1934. At that time the Edson Hotel was in the hands of a bondholders' committee composed of John M.· Bowlin, Carl M. Johnson, S. Watts Smyth, and J. D. Evans. The contract consists of an offer by·plaintiff Hargrove, and accepted by the committee, whereby Hargrove agreed to obtain for the committee a loan of not less than $100,000 and not more than $125,000 on terms stipulated, and providing that if 'he procured such loan in an amount less than $125,000 "that the undersigned (Hargrove), within ten months from the date of the acceptance of this proposal, will have the right and option of leasing said hotel property on the terms and conditions hereinafter set out, and in the event the loan obtained is $125,000.00, then the undersigned, within twelve months from the acceptance of this proposal will have the right and option of leasing said hotel property on the terms and conditions hereinafter set out." The loan was obtained and the option¹ contract became effective. Whatever Mr. Hargrove did by way of performance was done within the option period and the only question is did the facts plead constitute performance.

The option condition was set out in subdivision (b), paragraph 4 of the proposal, as follows: "(b) The Lessor shall be the. Bondholders' Protective Committee or any corporation which it may form to take title to said premises and property after said sale and the Lessee shall be the undersigned who agree to provide a cash capital of $25,000.00 to operate said hotel or a corporation having a cash capital of not less than $25,000.00, which may be formed solely for the purpose of operating the hotel property known as the Edson Hotel, and for no other purpose." The proposal was accepted by the committee. There. were two written extensions of the time of the option, the last expiring July 15, 1935. By letter dated March 12, 1935, addressed to Mr. Hargrove and signed by J. M. Bowlin, chairman of the bondholders' committee, it was stated that by vote of the committee Mr. Hargrove's option was extended to July 1, 1935, the letter stating: "Under this agreement you were to form 'a company to take over the operation of· the Edson Hotel at Beaumont, Texas. The other terms and conditions of the agreement remain unchanged.". And by letter dated June 28, 1935, signed by Mr. Bowlin, the option was extended to July 15, 1935. That letter was as follows:

"St. Louis, Missouri.
"June 28, 1935.
"Mr. H. M. Hargrove,
"% The Edson Hotel
"Beaumont, Texas.
"Dear Mr. Hargrove:
"I acknowledge receipt of yours of June 24th, in which you advise that it has been definitely decided to form a company along the lines outlined, with a minimum capital of $25,000.00. In your letter you also state that you and your associates prefer to have the lease and the operation of the Hotel become effective about September, or, possibly, about October, and suggest that you do not believe I, or the Committee would want the operating company to sustain a substantial loss from operation the first two or three months after begining business, and you believe this result is almost certain to follow under present conditions.

"You realize, of course, that the Committee members are Trustees and I do not think that as Trustees they have any right to transfer a loss which should be the loss of the operating company to their trust. Accordingly, I not only think it is important but necessary that you immediately

form your Company and have it ready to operate and be able to submit to the Committee, on or before July 15, 1935, satisfactory evidence that it has a cash capital available solely for the operation of the Edson Hotel of $25,000.00.

"I requested Mr. Long to draft a lease conforming to the agreement and I herewith enclose a copy of his draft of the same.

"This lease has not been submitted to the Committee, who, by the terms of the original proposition, are to pass upon its provisions, and it may be that after the Committee has gone over the lease it may want to make some changes or alterations, but these changes or alterations will in no respect change the obligations assumed by you under the original agreement, but will be in the nature of safeguards to the interest of the bondholders, which it, of course, is bound to safeguard.

"I am deferring the submission of the lease to the Committee for its approval until you submit me evidence satisfactory to the Committee that the Company you are forming has the cash capital required by your proposal to operate the hotel.

"While under your present arrangement with you July 1st was set as the date when your extension would expire, I am proposing to the Committee that this be extended to July 15th, but everything must be in readiness at that time, otherwise, the Committee will require the Company to make new arrangements for the operation of the hotel.

"Very truly yours,
"(Signed)    J. M. Bowlin."

Plaintiff, after pleading generally that he complied with the requirements of the contract, plead specifically:

"In this connection, plaintiff alleges that on July 13, 1935, he had a long distance telephone conversation with the said J. M. Bowlin and in which conversation plaintiff advised the said J. M. Bowlin that all arrangements for the organization of a company of several good and financially reliable business men had been completed and that the cash capital of $25,000.00 and even more than this amount had been subscribed and in good faith pledged by such business men forming said company and were ready to act on the matter, and that plaintiff was informed in said conversation by the said J. M. Bowlin that such information was satisfactory, that they would not be technical about the matter, and re-

quested the said plaintiff to confirm his statements by wire, and that thereafter plaintiff, in confirmation of his said conversation with the said J. M. Bowlin, sent the following telegram, to wit:

"'July 15, 1935
"'John M. Bowlin,
"'Mississippi Valley Trust Co.,
"'St. Louis, Mo.

"'All money arrangements completed and company ready for incorporation and execution of lease stop As you have mentioned possible changes in form of agreement submitted however it is desired by some of associates that exact form be first submitted for inspection stop Hope no material changes from original proposal will be included in new draft stop It is possible different group or company may be formed later to handle purchase negotiations therefore will ask you also prepare optional form of lease agreement eliminating all provisions pertaining to purchase and if this form is executed such provision will stand for the time being as provided in original draft stop May be out of town for day or two but hope to be back by time you return to St. Louis.

"'H. M. Hargrove
"'Prepay and charge to Edson Hotel'

"Plaintiff further alleges that he, in all other respects, has fully complied with the terms and conditions of said contract, and has in all other respects duly accepted the option to lease said premises."

■ While plaintiff alleges in his pleading in general terms that he fully complied with all conditions of his option he went further, doubtless for the purpose of testing his case on demurrer, a practice which is to be commended in cases such as this, and plead in detail the specific facts as above quoted, upon which he relies to establish compliance with the option. Thus pleading compliance, he further plead that the defendant declined to make the lease to him and sought damages for the breach in the sum of $172,500, and in the alternative the sum of $126,000. As before stated, the trial court sustained the defendant's general demurrer.

### Opinion.

It is not questioned that whatever the plaintiff did was done before the expiration of the option period. So the question is, did he plead a compliance by performing the things which he was required by

the option contract to do in order to claim the right? We have set out above the pertinent option provision of the original contract and the letters extending the option period, which, of course, formed a part of the whole contract. As we interpret the contract so plead, it imposed two essential requirements to be performed by Mr. Hargrove within the option period. These were, first, that he provide a cash capital of at least $25,000 either by having that amount available himself or by providing a company with a cash capital of that amount, and, second, if the company was organized to supply the capital such company was to be "provided" by Mr. Hargrove within the option period.

Mr. Hargrove did not plead that he personally had the required capital, but alleged only that he orally notified Mr. Bowlin in a telephone conversation on July 13, 1935, "that the cash capital of $25,000.-00 and even more than this amount had been subscribed and in good faith pledged by good and financially reliable business men." This did not meet the requirement of the contract with respect to providing the capital. The original contract stipulated that Mr. Hargrove would provide "a corporation having a cash capital of not less than $25,000.00" for operating the hotel property, and the letter of June 28, 1935, stipulated that Mr. Hargrove would "be able to submit to the Committee, on or before July 15, 1935, satisfactory evidence that it (the company) has the cash capital available solely for the operation of the Edson Hotel of $25,000.00." And in the same letter Mr. Bowlin stated, "I am deferring the submission of lease to the Committee for its approval until you submit me evidence satisfactory to the Committee that the company you are forming has the cash capital required by your proposal to operate the hotel." We think these stipulations leave no doubt that it was contemplated that cash capital actually paid in and available within the option period was required.

And with respect to the formation of the company, we think the contract plainly stipulated that the contemplated company should be formed, that is to say that its organization should be completed within the option period. In this connection we do not deem it necessary to decide whether the stipulation required that a corporation be chartered before July 15, 1935, as contended by appellee, or whether the

letters so modified the contract as that the formation of a "company" composed of an unincorporated, operating group would have been a sufficient compliance. In either case the requirement was that such company, or operating group, be "provided" by Mr. Hargrove within the option period. This could only mean that the company contemplated by the contract must be fully organized and ready to do business. The letter of June 28, 1935, from Mr. Bowlin to Mr. Hargrove left no doubt on that point. Mr. Bowlin there stated as a requirement "that you (Mr. Hargrove) immediately form your company and have it ready to operate." And in that same letter, and apparently with the intent of making it clear that all things required to be done must be completed within the period, Mr. Bowlin stated: "While under our present arrangements with you July 1st was set as the date when your extension would expire, I am proposing to the Committee that this be extended to July 15, but everything must be in readiness at that time, otherwise the Committee will require the Company to make new arrangements for the operation of the hotel." The pleading did not allege compliance with that provision of the contract but only that "all arrangements for the organization of a company of several good and financially reliable business men has been completed and that the cash capital of $25,000.00 and even more than this amount had been subscribed and in good faith pledged by such business men forming said company and were ready to act on the matter." Thus the pleading affirmatively shows that no organization, ready to operate, had been formed. At most there was but an agreement to form it. And thus, as we construe the contract and the pleadings, the plaintiff failed to plead compliance with the option requirements in either of the essential respects named.

It seems to us too obvious to admit of argument that "arrangements for the organization of the company" is far short of a completed organization "ready to operate" and mere subscription pledges, even though made in good faith by responsible business men, did not constitute "cash capital available." Nor can it be said that "arrangements for organizing a company" and cash capital "subscribed" but not paid in satisfied the requirement in the letter of June 28, 1935, that "everything must be in readiness at that time" (July 15, 1935). So it is our conclusion that appel-

lant did not plead a compliance with the option contract.

■ The contract plead by Mr. Hargrove did not bind him to anything but was purely an option giving him the right to claim the lease on the hotel by complying with the conditions stipulated within the time fixed, and his alleged cause of action must be tested by the law applicable to option contracts. First of all, time was of the essence of the contract and in order to secure its benefits it was essential that Mr. Hargrove, within the time stipulated, perform the conditions. Investors' Utility Corp. v. Challacombe, Tex.Civ.App., 39 S. W.2d 175; Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 787; Garrison v. Cooke, 96 Tex. 228, 72 S.W. 54, 61 L.R.A. 342, 97 Am.St.Rep. 906. And performance of the condition was indispensable to the very existence of his right. Jacksonville, M. P. R. Co. v. Hooper, 160 U.S. 514, 16 S.Ct. 379, 40 L.Ed. 515.

But counsel for appellant insist that Mr. Hargrove, in his telephone conversation with Mr. Bowlin, submitted proof of compliance which was accepted by Mr. Bowlin as satisfactory, and hence that he substantially complied with his undertaking.

■ The contract was one which the statute of frauds required to be in writing. Vernon's Ann.Civ.Stat. Art. 3995, Subd. 4. The general rule is that a contract which is in writing in accordance with the statutory requirement may not be modified or rescinded by subsequent oral agreement between the parties. And parol evidence is inadmissible to affect such a contract or to vary any provision of it. 20 Tex. Jur. Sec. 6, p. 213; Robertson v. Melton, Tex.Com.App., 115 S.W.2d 624, 118 A.L.R. 1505; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Ickert v. Minor, Tex.Civ.App., 22 S.W.2d 741; Cress v. Holloway, 63 Tex.Civ.App. 590, 135 S.W. 209. Counsel for appellant do not question the correctness of these legal propositions.

■ But it is insisted that the conversation between Mr. Hargrove and Mr. Bowlin did not vary the contract, but was merely the submission of "proof satisfactory to the Committee", as provided by the contract itself. We do not think the contention is tenable. Had Mr. Hargrove plead the actual organization of his company with the available cash capital required, leaving before us for decision only the question of whether he submitted satis-

factory proof of such facts, the contention would no doubt be sound. The contract did not provide how proof of compliance should be made but only that "satisfactory proof" be submitted to the Committee. But the proof required to be submitted was proof *of compliance*. To permit proof that Mr. Bowlin accepted proof of *non-compliance* as satisfactory evidence of *compliance* would be to vary the contract itself. It would be to change a vital provision of the contract by parol. This the statute will not allow.

The judgment of the trial court is affirmed.